UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

MARY CORRADINO,                                     No. 19-Civ.-

          Plaintiff,                              COMPLAINT

  - against -

LIQUIDNET HOLDINGS INC., AND SETH
MERRIN,

          Defendants.
------------------------------------X

       Plaintiff Mary Corradino ("Corradino") by her attorneys, Vladeck, Raskin & Clark, P.C., complains of defendants Liquidnet Holdings, Inc. ("Liquidnet" or "the Company") and Seth Merrin ("Merrin") (collectively "defendants") as follows:

### NATURE OF CLAIMS

    1.     "Are you ever going to come home with me? How about tonight?" "Have you had an affair?" "What do you do for sex?" "You look like you would enjoy a big fat Cuban." These are among the sexually harassing comments that Corradino, an experienced Human Resources ("HR") professional, has had to endure during her tenure at Liquidnet. Much of this conduct has been perpetrated by the Company's Chief Executive Officer Seth Merrin, who has made clear that he wants to have a sexual relationship with Corradino. Remarkably, the conduct has continued despite Corradino's complaints and her efforts to make the harassment stop. Sadly, the result of Corradino's efforts is that her career path has been blocked and she is now being marginalized and pushed out.

    2.     Corradino brings this action to remedy sexual exploitation in violation of the Trafficking Victims Protection Act, 18 U.S.C.A. § 1591; 1595 ("TVPA").

1061649 v1

3. In addition, Corradino brings this action to remedy sex discrimination and retaliation for opposition to unlawful practices in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, and the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code, § 8–107(1)(a).[1]

## JURISDICTION AND VENUE

4. Jurisdiction of this court is proper under 28 U.S.C. §1331 and 18 U.S.C.A. § 1591; 1595 as the cause of action arises under federal law.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendant's U.S. headquarters is located in New York, New York and a substantial part of the events or omissions giving rise to these claims occurred within this District.

6. This Court has supplemental jurisdiction over plaintiff's NYCHRL and NYSHRL claims pursuant to 28 U.S.C. § 1367 because these claims closely relate to her TVPA claims, having arisen out of a common nucleus of operative facts, such that all claims form part of the same case or controversy.

## PARTIES

7. Corradino is a resident of New York State. She has worked at Liquidnet for 13 years. Her current position is "Global Head of Talent Acquisition and Director, HR Business Partners."

---

[1] Corradino will file a charge of discrimination against Liquidnet with the United States Equal Opportunity Employment Commission (the "EEOC") alleging sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). When Corradino receives the notice of her right to sue from the EEOC, she will seek to amend the Complaint to add claims for discrimination and retaliation under Title VII. The facts set forth herein support those claims as well, and therefore there will be no prejudice to Liquidnet by this procedure.

8. Liquidnet is a holding company specializing in global financial services and technology. Liquidnet has over 450 employees. Liquidnet has locations in several cities throughout the world. Its global headquarters is in New York, New York.

9. Merrin is a New York City resident. He is the CEO and majority owner of Liquidnet.

## FACTUAL ALLEGATIONS

### Plaintiff's Background and Employment with Liquidnet

10. Corradino is a renowned HR professional with years of experience in human capital management, talent acquisition, executive coaching, and sales. Since graduating summa cum laude from The College of William and Mary, Corradino has worked for high-profile companies, including as a Division Director for the staffing agency Robert Half International ("RHI"), now a Fortune 500 Company. In that role, Corradino was ranked numerous times as one of RHI's top ten recruiters globally and led RHI's number one placement team in the world.

11. Merrin founded Liquidnet in 2001. Shortly afterwards, Corradino, who was then working as a recruiter, took on Liquidnet as a client. She worked with Liquidnet in this capacity for approximately four years.

12. In or around December 2006, Liquidnet hired Corradino as a full-time employee with the title of Global Head of Recruiting. In this position, Corradino reported directly to the Global Head of HR and, as second-in-command in HR, Corradino also worked closely with Merrin.

13. Corradino quickly became known as a top performer for Liquidnet. As a result, in 2010, Liquidnet promoted Corradino to assume the responsibilities of the former Head

of HR Generalists. She also took on numerous other tasks, including general and international HR functions, as well as compensation and benefits. At the same time, Corradino became responsible for oversight of all HR Generalist and Compensation and Benefits staff.

14. Liquidnet recognized Corradino's potential. For example, Liquidnet held an annual offsite meeting, where, among other things, executives identified employees with strong leadership potential. These names were selected by Merrin and Corradino's supervisor, among others. Corradino was included among that list of top performers each year from 2012 to 2018.

## Sexual Harassment

15. Unfortunately, to progress within the Company, Corradino has had to tolerate a culture of sexual harassment. Corradino herself was subjected to pervasive sexual harassment by a number of senior leaders at Liquidnet and specifically, by Merrin, the CEO.

16. Over the course of Corradino's career, Merrin has continually pressured Corradino to have sex with him.

17. In or around mid-to-late 2014, during a business meeting in Merrin's office, Merrin asked Corradino, "What do you do for sex?" Corradino was dumbfounded and wanted to change the subject.

18. That Merrin wanted to have a sexual relationship with Corradino was obvious to Corradino's colleagues, and particularly humiliating for Corradino. The current Head of Europe, the Middle East, and Africa ("EMEA") and Global Head of Sales at Liquidnet stated that Corradino should date Merrin in order to advance her career. He told Corradino she should "take one for the team." Corradino told him that she was not interested in Merrin and that she does not mix business and personal matters. The Head of EMEA responded by telling Corradino

that "not all women are like that" and that "some would not care and just be with him to get ahead because he has a lot of money."

19. Although Corradino had never reciprocated Merrin's advances, Merrin's conduct toward Corradino continued to escalate.

20. In or around December 2014, for example, Merrin asked Corradino, in front of the then Company's CTO and his wife, "Are you coming home with me tonight? Are you ever going to come home with me?" Corradino was, once again, humiliated. Merrin's comments were so inappropriate that the then-CTO confessed to Corradino, "I couldn't believe that, in this day and age. If you ever need me to tell that one, I would." Corradino told him that she had experienced "bad behavior," often from Merrin and some of the other Leadership men in the office and did not know what to do about it.

21. Merrin also frequently made inappropriate comments to Corradino about other female colleagues. For example, at a Company holiday party, Merrin gave a "toast" to a female employee's husband, thanking the husband for letting Merrin "use his wife" for the past few weeks.

22. In or about May 2018, Merrin gave a quarterly "state of the company" presentation to Liquidnet employees. Towards the end of his presentation, Merrin answered a question about the status of the Company's Initial Public Offering, announcing "here's the money shot," referring to a vulgar term used in pornography. Several employees (all men) who attended the presentation laughed loudly at this, other people in the room looked around in discomfort.

23. Following the meeting, Corradino spoke with the Company's General Counsel ("GC") to protest Merrin's sexual harassment. Corradino told the GC that, particularly

in the wake of the "Me Too" movement, Merrin's statements put the company at risk. The GC, who also attended the presentation, agreed with Corradino and said she would talk to Merrin about his conduct.

24. This was not Corradino's only complaint. In or around early 2018, Corradino told her supervisor that she personally has had to field inappropriate comments from senior leadership. Corradino said that she was concerned about what was happening to other women at Liquidnet if Corradino was still being subjected to this type of behavior.

25. In or around February 2018, Corradino suggested that the Company act quickly to implement appropriate training, and identified and proposed specific training solutions. Remarkably, Corradino's supervisor and others disagreed that the problems needed to be addressed urgently. As a result, the changes Corradino suggested were not implemented until over four months later and were not rolled out to the entire United States division for Liquidnet until September or October 2018.

26. Unfortunately, Corradino continued to be sexually harassed by Merrin. On or about July 16, 2018, for example, Merrin once again hit on Corradino, asking her, "Are you ever coming home with me? How about tonight?"

27. Merrin's inappropriate conduct continued even after the training. In April 2019, Corradino had lunch with Merrin and several other male leaders where Merrin continued to make sexualized comments, including stating that "watching Game of Thrones with [his] daughter was like watching porn with her"; that he was "having dinner with Charlize Theron over the [upcoming] weekend and would like to get with her"; and that a male employee who is openly gay, "didn't know what he was missing" by not having sex with women.

28. During this April 2019 lunch, Merrin also turned his attention to

Corradino, repeatedly asking her, "When are you going to get married," and "When are you going to marry me." Corradino asked Merrin to stop, telling him that people would start a "vicious rumor" about them. Merrin responded by looking at Corradino with a hurt expression, saying "really, Mary, a vicious rumor."

29. As Corradino suspected, word spread about Merrin's comments. A week or so after the April 2019 lunch, Liquidnet's Head of Operations, told Corradino that he was "sorry to hear what happened." He further stated, "with all the training you all have done around here, I still can't believe Seth [Merrin] doesn't get it. You all neutered me." The Head of Operations told Corradino he would speak to Merrin about the incident.

30. Approximately two weeks after the April 2019 lunch, another colleague, who also attended the lunch, complained to Corradino about Merrin's behavior. This employee, who is gay, told Corradino that he felt Merrin's comments were inappropriate, especially about the gay colleague "[not] know[ing] what he was missing" by not having sex with women.

31. Corradino was far from the only woman sexually harassed by Merrin. For example:

    a. Merrin asked Liquidnet's female GC, "How many drinks would I have to buy you so you would sleep with me?"

    b. Upon information and belief, Merrin required his female assistant to order prostitutes for him;

    c. Merrin incessantly texted a junior female employee who made clear that she was not romantically interested in him; and

    d. Merrin asked another female management-level employee to "go home" with him.

## Other Sexual Harassment

32. Merrin was not the only sexual harasser at Liquidnet. In or around winter 2009, the then COO asked Corradino to go out with him for a drink at the bar below Liquidnet's offices. While at the bar, the COO, who was married, asked Corradino, "Have you ever had an affair?" He told Corradino that he had done so "a few times." Corradino, understanding that she was being propositioned for sex, responded by stating that she "did not mix men with work" and does not "mess around with married men." The COO then suggestively asked Corradino, "What do you think, I'd leave my wife for you?"

33. Between 2009 and 2011, Liquidnet's Head of Member Services also asked Corradino out multiple times, including asking Corradino to join him at his beach house for the weekend. The Head of Member Services frequently complimented Corradino's appearance, intelligence, and "strength as a woman." He made clear that his interest in Corradino was sexual. For example, the Head of Member Services saw Corradino showing another Liquidnet employee a video on YouTube in the Liquidnet offices. Merrin joked that Corradino was "looking at porn," embarrassing Corradino. The Head of Member Services responded, in front of everyone present at the meeting, including Corradino's direct supervisor, that he was "distracted for a second, I mean Mary and porn in the same sentence."

34. The former Head of EMEA repeatedly asked Corradino to go out with him. Corradino did not reciprocate. Nevertheless, after an offsite dinner meeting with members of Liquidnet senior leadership, he propositioned Corradino for sex, asking her to join him in a hotel room. Corradino said no.

35. In or about July 16, 2018, Liquidnet's then Asia Pacific ("APAC") Chief Operating Officer asked Corradino multiple times to "take [him] home tonight." Corradino

1061649 v1

reported the sexual harassment to Liquidnet's Head of HR for APAC, as well as to Corradino's supervisor.

36. The next night, Corradino attended another group dinner with members of senior leadership. Towards the end of the dinner, some members of the group left to go smoke cigars. As he was leaving, the current Head of EMEA and Global Head of Sales at Liquidnet, loudly told Corradino, "You look like you would enjoy a nice big fat Cuban." Corradino, surprised and embarrassed by the sexual implications of his comments, excused herself and left.

37. Corradino also learned that Liquidnet's executives had been making sexual comments about Corradino behind her back. For example, Corradino's colleagues in Liquidnet's London office have repeatedly referred to her as "sexy" and stated that they "love" her.

38. Moreover, in around 2008 or 2009, Corradino began to suspect that her direct supervisor, the Global Head of HR, had developed a sexual interest in her. During that time, Corradino's supervisor lavished unwanted praise on Corradino's appearance and personality (well beyond what was professionally appropriate), telling Corradino, "You are the whole package, smart, soulful, and beautiful" and "You have an incredible presence."[1]

39. Corradino believed that these flirtatious comments, coming from her boss, not to mention the Head of HR, were inappropriate. Nevertheless, Corradino continued to be polite to her supervisor who effectively controlled Corradino's future at the Company.

40. In or around summer 2009, Corradino's supervisor learned for the first time that Corradino had a boyfriend and effectively stopped speaking to Corradino for about a week. Corradino's supervisor subsequently became cool and less friendly towards Corradino.

41. In or around March 2014, Corradino began dating a new man. When her

supervisor learned that Corradino was dating someone new, the supervisor once again reacted in an upset and accusatory fashion, asking Corradino, "Why didn't you tell me about this?"

### Retaliation

42. Over the past year and a half, Merrin and Corradino's supervisor have made clear that they are no longer interested in fostering Corradino's growth at Liquidnet and, to the contrary, that they would block Corradino from future opportunities.

43. For example, Corradino's supervisor has refused to have further discussions about Corradino's potential for advancement. Moreover, the supervisor has told others that Corradino would not be a "successor" and would be leaving with a "package."

44. On or about August 21, 2019, Corradino's supervisor showed Corradino restructuring plans, which would effectively strip Corradino of many of her responsibilities, including headcount planning, the employee and peer recognition program, new hire orientation and onboarding, external surveys and the Workplace Experience function and team. According to the supervisor, Merrin "supported" the restructure.

45. The next day, August 22, 2019, Corradino asked her supervisor about what the changes to her responsibilities would mean for her career at the Company. Corradino's supervisor urged Corradino to leave the Company, saying, "You are young, start new and start over somewhere else. You don't seem happy."

### FIRST CAUSE OF ACTION
### TVPA

46. Plaintiff repeats and realleges paragraphs 1 through 45 above.

47. By the acts and practices described above, defendants have subjected plaintiff to sexual exploitation by offering something of value—job advancement opportunities—in exchange for sex.

1061649 v1

48. Defendant is a multi-national company that engages in interstate commerce.

49. Plaintiff suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendants' practices.

## SECOND CAUSE OF ACTION
### NYSHRL: Discrimination

50. Plaintiff repeats and realleges paragraphs 1 through 49 as if fully set forth herein.

51. By the acts and practices described above, defendants, in violation of the NYSHRL, discriminated against plaintiff on the basis of her sex.

52. Defendants acted intentionally and with malice and/or reckless indifference to plaintiff's statutorily protected rights.

53. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendants' discriminatory practices.

## THIRD CAUSE OF ACTION
### NYSHRL: Retaliation

54. Plaintiff repeats and realleges paragraphs 1 through 53 as if fully set forth herein.

55. By the acts and practices described above, defendant, in violation of the NYSHRL, retaliated against plaintiff because of her opposition to defendants' unlawful conduct.

56. Defendants acted intentionally and with malice and/or reckless indifference to plaintiff's statutorily protected rights.

57. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendants' discriminatory practices.

## FOURTH CAUSE OF ACTION
### NYCHRL: Discrimination

58. Plaintiff repeats and realleges paragraphs 1 through 57 as if fully set forth herein.

59. By the acts and practices described above, defendants, in violation of the NYCHRL, discriminated against plaintiff on the basis of her sex.

60. Defendants acted intentionally and with malice and/or reckless indifference to plaintiff's statutorily protected rights.

61. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendants' discriminatory practices.

## FIFTH CAUSE OF ACTION
### NYCHRL: Retaliation

62. Plaintiff repeats and realleges paragraphs 1 through 61 as if fully set forth herein.

63. By the acts and practices described above, defendant, in violation of the NYSHRL, retaliated against plaintiff because of her opposition to defendants' unlawful conduct.

64. Defendants acted intentionally and with malice and/or reckless indifference to plaintiff's statutorily protected rights.

1061649 v1

65. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendants' discriminatory practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a Judgment:

(a) declaring the acts and practices complained of herein to be violations of the TVPA, the NYSHRL, and the NYCHRL.

(b) enjoining and permanently restraining these violations of the TVPA the NYSHRL, and the NYCHRL.

(c) directing defendants to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d) directing defendants to place plaintiff in the position she would have occupied but for defendant's discriminatory and retaliatory treatment of her, and making her whole for all earnings and other benefits she would have received but for defendant's discriminatory treatment, including but not limited to wages, including back pay and front pay, bonuses, and other lost benefits;

(f) directing defendants to pay plaintiff punitive damages under the TVPA;

(g) directing defendants to pay plaintiff compensatory damages, including damages for emotional distress, humiliation, pain and suffering, and injury to professional standing and reputation;

(h) directing defendants to pay plaintiff additional amounts as punitive damages;

1061649 v1

   (i) awarding plaintiff such interest as is allowed by law, and damages for any adverse tax consequences stemming from an award;

   (j) awarding plaintiff the costs of this action, together with reasonable attorneys' fees; and

   (k) awarding such other and further relief as this Court deems necessary and proper.

## DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated: New York, New York
   November 8, 2019

              VLADECK, RASKIN & CLARK, P.C.

         By: _____
            Valdi Licul
            Emily Miller
            Attorneys for Plaintiff
            565 Fifth Avenue, 9th Floor
            New York, New York 10017
            (212) 403-7300

1061649 v1