UNITED STATES DISTRCT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARY CORRADINO,

Plaintiff,

v.

LIQUIDNET HOLDINGS, INC. AND SETH
MERRIN,

Defendants.

---

ECF CASE

Civil Docket No. 1:19-cv-10434 (LGS)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

---

LITTLER MENDELSON, P.C.
A. Michael Weber
Emma J. Diamond
900 Third Avenue
New York, New York 10022
(212) 583-9600

*Attorneys for Defendants*

## TABLE OF CONTENTS

PAGE

I. INTRODUCTION ................................................. 1

II. FACTUAL BACKGROUND ........................................ 1

    A. Corradino's Allegations .................................. 1

III. LEGAL STANDARD ............................................ 3

IV. CORRADINO HAS FAILED TO PLEAD A VIABLE CLAIM FOR RELIEF UNDER THE TRAFFICKING VICTIMS PROTECTION ACT .......... 4

    A. Plaintiff Cannot State a Claim Against Defendants Because She Fails to Allege a Commercial Sex Act Occurred ...................... 6

    B. The TVPA Claims Against Liquidnet Fail ................. 9

    C. Plaintiff's TVPA Claims That Accrued Prior to November 8, 2009 Are Time-Barred ...................... 14

V. PLAINTIFF FAILS TO STATE A CLAIM OF DISCRIMINATION AGAINST LIQUIDNET OR SETH MERRIN ................... 15

VI. PLAINTIFF FAILS TO STATE A CLAIM OF RETALIATION UNDER NEW YORK STATE OR CITY LAW ................... 16

VII. TO THE EXTENT PLAINTIFF'S CIVIL CLAIMS REMAIN, THEY ARE TIME-BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS AND MUST BE DISMISSED ................... 20

    A. Plaintiff NYSHRL and NYCHRL Claims that Accrued Prior to November 8, 2016 are Time-Barred ...................... 20

VIII. CONCLUSION ................................................. 21

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*American Exp. v. Italian Colors Restaurant*,
570 U.S. 228, 133 S. Ct. 2304 (2013)......................................................................18

*Ardolf v. Weber*,
332 F.R.D. 467 ( 2019) ..............................................................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................3, 4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).....................................................................................................4

*Billings v. Town of Grafton*,
515 F.3d 39 (1st Cir. 2008)........................................................................................16

*Burlington N. & Santa Fe Ry. v. White*,
548 U.S. 53 (2006).....................................................................................................18

*Butts v. New York City Dep't of Hous. Pres. & Dev.*,
Case No. 00-CV-6307, 2007 U.S. Dist. LEXIS 6534 (S.D.N.Y. Jan 29, 2007)....................20

*Canosa v. Ziff*,
No. 18 Civ. 4115 (PAE), 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019)........................... *passim*

*Fattoruso v. Hilton Grand Vacations Co., LLC*,
873 F. Supp. 2d 569 (S.D.N.Y. 2012), aff'd, 525 F. App'x 26 (2d Cir. 2013)........................16

*Forrest v. Jewish Guild for the Blind*,
3 N.Y.3d 295 (2004)..................................................................................................15

*Geiss v. Weinstein Co. Holdings LLC, et al.*
383 F.Supp.3d 156 ................................................................................8, 11, 12, 13

*Guggenheimer v. Ginzburg*,
43 N.Y.2d 268 (1977)................................................................................................17

*Harris v. Mills*,
572 F.3d 66 (2d Cir. 2009)...........................................................................................3

*Keystone Auto. Indus., Inc. v. Montalvo*,
No. 14-cv-1637, 2014 WL 3696266 (E.D.N.Y. July 24, 2014)................................4

## TABLE OF AUTHORITIES
### (CONTINUED)

**Cases**                                                                                   **Page(s)**

*Lawson v. Rubin*,
    17-CV-6404, 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018) ...................................13

*Mauze v. CBS Corp.*,
    340 F. Supp. 3d 186 (E.D.N.Y. 2018) ...................................................................16

*McGill v. Parker*,
    179 A.D.2d 98 (1st Dep't 1992) ............................................................................17

*Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*,
    746 F. Supp. 2d 575 (S.D.N.Y. 2010) ...................................................................16

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir.2013)....................................................................................16

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018)................................................................ *passim*

*Ricchio v. McLean*,
    853 F.3d 553 (1st Cir. 2017)..................................................................................12

*Scott-Robinson v. City of New York*,
    No. 15-CV-09703 (NRB), 2016 WL 7378775 (S.D.N.Y. Dec. 15, 2016) .............................15

*Smith v. AVSC Intern., Inc.*,
    148 F.Supp.2d 302 (S.D.N.Y. 2001)......................................................................15

*United States v. Afyare*,
    632 F. App'x 272 (6th Cir. 2016) .......................................................................9, 10

*United States v. Evans*,
    476 F.3d 1176 (11th Cir.), cert. denied, 552 U.S. 878 (2007) .................................4

*United States v. Morrison*,
    529 U.S. 598, 120 S. Ct. 1740 (2000).....................................................................7

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
    570 U.S. 338, 133 S. Ct. 2517 (2013).....................................................................19

*Walker v. Schult*,
    717 F.3d 119 (2d Cir. 2013)...................................................................................3

## TABLE OF AUTHORITIES
### (CONTINUED)

**Statutes**                                                        **Page(s)**

18 U.S.C. § 1591 ........................................................................................... *passim*

18 U.S.C. § 1591(a) ..........................................................................................5, 6

18 U.S.C. § 1591 (e) (3) ....................................................................................7, 9

18 U.S.C. § 1595 ........................................................................................... *passim*

18 U.S.C. § 1595(a) ..........................................................................................9, 11

18 U.S.C. § 1595(c) ...........................................................................................14

New York City Human Rights Law ("NYCHRL") ......................................1, 15, 16, 20

New York State Human Rights Law ("NYSHRL") .....................................1, 15, 19, 20

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(6) ................................................ *passim*

New York City Administrative Code, § 8-107(1)(a) .....................................................1

## I.  INTRODUCTION

The Court should respectfully dismiss Plaintiff Mary Corradino's ("Corradino") First Amended Complaint ("FAC") against Defendants Liquidnet Holdings Inc. ("Liquidnet") and Seth Merrin ("Merrin") (collectively, the Defendants").   The FAC asserts the following claims: (i) Defendants violated the Trafficking Victims Protection Act, 18 U.S.C. § 1591 ("Section 1591"), under which a civil private right of action exists, 18 U.S.C. § 1595 ("Section 1595") (collectively, "TVPA") by subjecting Plaintiff to sexual exploitation and retaliation; (ii) Defendants violated the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code, § 8-107(1)(a) by subjecting Plaintiff to unlawful discrimination on the basis of her gender; and (iii) Defendants retaliated against Corradino by terminating her employment after she engaged in protected activity, in violation of all three statutes.   Corradino fails to state a claim to the extent her claims are time-barred by the applicable statutes of limitations under the NYSHRL, NYCHRL and TVPA.  Moreover, Corradino has failed to adequately plead any of the elements required under the TVPA.  Nor has she set forth viable claims under the NYSHRL or the NYCHRL. Accordingly, the Court should dismiss Corradino's claims with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.  FACTUAL BACKGROUND

### A.  Corradino's Allegations[1]

Plaintiff first joined Liquidnet in or around December 2006 as Global Head of Recruiting. (FAC ¶ 12).  Prior to joining Liquidnet as a full-time employee, Plaintiff worked as a recruiter and

---

[1] For the purposes of this motion only, Defendants accept Corradino's non-conclusory factual allegations as true. Defendants, however, reserve the right to seek discovery and to deny any and all non-conclusory factual allegations, should the Court deny this motion to dismiss.

took on Liquidnet as a client. *Id.* She worked in this capacity for four years before joining Liquidnet full-time. *Id.*

Plaintiff alleges that over the course of her employment at Liquidnet, she was subjected to a "culture of harassment" by Defendant Seth Merrin and other "senior leaders at Liquidnet." (FAC ¶ 15). Plaintiff's allegations span a period of more than ten years (from 2008-2019) and she accuses at least eight other executives of engaging in similar harassing behavior. (FAC ¶ ¶ 32-38).

Specifically, Plaintiff alleges that in-or-around 2014, Mr. Merrin made comments to Plaintiff including, "what do you do for sex?" and "are you coming home with me tonight?" (FAC ¶¶ 17, 20). In 2018, Plaintiff alleges that Mr. Merrin once again asked whether Plaintiff was "ever coming home with [him]?" (FAC ¶ 27) and in April 2019, Mr. Merrin asked whether Plaintiff "was ever going to marry" him (FAC ¶ 29). Notably, the FAC is utterly devoid of facts demonstrating that Plaintiff ever did go home with Mr. Merrin or engaged in *any sexual act* in response to these questions or that she suffered any adverse employment action as a result of her refusal to acquiesce in these alleged demands.

Plaintiff also alleges that Mr. Merrin subjected her to "sexualized comments" including stating that "watching Game of Thrones with [his] daughter was like watching porn with her"; that he was "having dinner with Charlize Theron over the [upcoming] weekend and would like to get with her" and referring to slides in his presentation as "the money shot." (FAC ¶¶ 23, 28).

Plaintiff alleges that she was encouraged by others to engage in a sexual relationship with Mr. Merrin. For example, the Head of Europe, the Middle East and Africa and Global Head of Sales at Liquidnet allegedly stated that Plaintiff should "take one for the team." (FAC ¶ 18). When Plaintiff refused, the Global Head of Sales allegedly stated that "some [women] would not care and [would] just be with him to get ahead because he has a lot of money." *Id.*

Plaintiff also claims that other senior leaders at Liquidnet subjected her to harassment. For example, in or around winter 2009, Liquidnet's Chief Operating Officer allegedly asked Plaintiff out for drinks and, while there, suggested that they have an affair. (FAC ¶ 33). Plaintiff declined and does not allege that she was promised anything in return had she complied with his request or suffered any consequences for refusing to do so. *Id.* Similarly, Plaintiff alleges that Liquidnet's Head of Member Services invited her out to his beach house multiple times during 2009-2011. (FAC ¶ 34). Plaintiff states that he also "complimented Corradino's appearance, intelligence, and 'strength as a woman'" and that he "made clear that his interest in Corradino was sexual." *Id.* However, Plaintiff declined his offers and does not plead facts related to any benefit she would have received had she acquiesced to the beach house invitation or consequences for her refusal to accede to his requests. Plaintiff also alleges that she was referred to as "sexy" and was told that it looked like she would "enjoy a nice big fat Cuban" and was described, among other things, as being "the whole package." (FAC ¶¶ 37-39). However, presumably no sex act occurred or benefits materialized as a result of these comments as none are pled in the FAC.

## III. LEGAL STANDARD

In deciding a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's factual allegations as true and construe those allegations in the manner most favorable to the plaintiff. *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir. 2013). However, a court is not required to accept as true legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments. *Harris v. Mills,* 572 F.3d 66, 71-72 (2d Cir. 2009) (*citing Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). In addition, the plaintiff must plead sufficient factual matter to render the legal claim plausible, not just merely possible. *Keystone Auto. Indus., Inc. v. Montalvo,* No. 14-cv-1637, 2014 WL 3696266, at *2 (E.D.N.Y. July 24, 2014) (citing *Iqbal,* 556 U.S. at 679). The Supreme Court has stressed that "[a] pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  Rather, to survive a motion to dismiss, a complaint must (i) contain sufficient facts (not merely legal conclusions or recitation of necessary elements) and (ii) state a plausible-and not simply a conceivable-claim. *Id.* at 678-79.

## IV.     CORRADINO HAS FAILED TO PLEAD A VIABLE CLAIM FOR RELIEF UNDER THE TRAFFICKING VICTIMS PROTECTION ACT

Plaintiff, who alleges that she was subjected to a "culture of sexual harassment," which allegedly included statements that she was "the whole package and sexy" as well as invitations for marriage, weekends away and to start affairs,  seeks civil liability against Liquidnet and its Chief Executive Officer, Mr. Seth Merrin, pursuant to a federal statute that criminalizes sex trafficking. 18 U.S.C. §§ 1591, 1595.  However, that statute, codified as 18 U.S.C. §§ 1591, provides that "[s]ex trafficking of children or by force, fraud, or coercion," is "part of a comprehensive regulatory scheme" that "criminalizes and attempts to prevent slavery, involuntary servitude, and human trafficking for commercial gain." *United States v. Evans*, 476 F.3d 1176, 1179 (11th Cir.), cert. denied, 552 U.S. 878 (2007) ("Congress recognized that human trafficking, particularly of women and children in the sex industry, 'is a modern form of slavery, and it is the largest manifestation of slavery today'").

Under the statute, victims of the conduct proscribed in 18 U.S.C. § 1591 are entitled to seek civil damages as private litigants under 18 U.S.C. § 1595.  Specifically, sanctions are provided against anyone who "knowingly" "recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person" with the knowledge that "means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means" would be employed to "cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a).

However, not all alleged sexual assaults – less, even, harassment as is alleged here – constitute a federal violation and Plaintiff markedly fails to plead the essential elements to support a claim under the TVPA.  Even assuming Plaintiff's allegations are true, they would improperly apply the TVPA statute to vague harassment or hostile work environment claims occurring between two adults, one of whom holds influence over the other.  Finding such liability, however, is notably contrary to the statute's purpose, which is to prevent the trafficking and involuntary servitude of women and children in the sex industry for commercial gain.

Even a cursory glance at Plaintiff's FAC leads to the conclusion, as discussed more fully below, that a violation of 18 U.S.C. § 1591 has not occurred.  There are no allegations that Mr. Merrin or any other senior leader somehow enslaved Plaintiff at any time during her employment. There are no allegations that Mr. Merrin, or any other senior leader, trafficked Plaintiff for commercial gain.  Moreover, the FAC is completely devoid of any allegation suggesting that any sex act actually ever occurred.  Even if it had, Plaintiff still has not alleged that anything of "value" was given to Liquidnet, let alone to Mr. Merrin, in exchange for the sex act.  Taking Plaintiff's allegations as true, the sexualized comments Plaintiff enumerates in FAC simply do not rise to the type of criminality that the TVPA is meant to protect against – namely, to prevent the trafficking and involuntary servitude of women and children in the commercial sex industry.

Thus, the First and Second Causes of Action of Plaintiff's FAC should be dismissed with prejudice.

A.     **Plaintiff Cannot State a Claim Against Defendants Because She Fails to Allege a Commercial Sex Act Occurred**

1.     **The Facts Alleged Do Not Describe "Sex Acts" as Required by 18 U.S.C. § 1591**

The plain language of 18 U.S.C. § 1591(a) requires Plaintiff to plausibly allege that "if things go as…planned, force, fraud or coercion will be used to cause his victim to engage in a

commercial sex transaction." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 518 (S.D.N.Y.  2018) (emphasis added). In other words, "Defendant must have intended, or been aware, that the fraud and force would cause a sex act to take place." *Id.* at 519.

As an initial matter, Plaintiff has not pled that any sex act actually occurred.  Rather, Plaintiff alleges that she was asked out for dates, an affair, marriage, weekends away and, on one occasion, asked "what do you do for sex?" (FAC ¶¶ 17, 20, 27, 29, 33-34, 35, 36).  Such allegations are insufficient to withstand a motion to dismiss. See *Noble* at 518 ("Statements made incidental to the sex act made for a reason other than to bring about the act – are not enough.") *Id.* at 519. "Whether the Amended Complaint plausibly alleges a causal relationship between the promises…made and the force…employed on the one hand and the sex act's occurrence on the other, is a crucial inquiry." *Id.* Plaintiff has failed to plausibly allege such a relationship here.

Plaintiff also fails to state that any force was used.  Her only allegation implying that she felt "forced" is to note that she was "polite" to her boss as he "controlled" her future at the Company.  (FAC ¶ 40).  However, such an allegation is insufficient to establish the "sex act" element under the TVPA.

For instance, in *Noble*, this Court found that force had been established when plaintiff alleged that Harvey Weinstein "forcibly pulled [plaintiff] into the bathroom," that he "gripped her firmly," and "pulled down [her] shirt" and "forced her to masturbate him." 335 F. Supp. 3d at 519-20.  Similarly, in *Canosa v. Ziff*, No. 18 Civ. 4115 (PAE), 2019 WL 498865, at *7 (S.D.N.Y. Jan. 28, 2019), Judge Paul Engelmayer once again found that force has been sufficiently pled when plaintiff alleged that Harvey Weinstein had "intimated her into having oral sex…raped her in Malaysia…and forced her into a sex act in a Beverly Hills hotel."  Clearly, Plaintiff's allegations fall far from this standard.

Similarly, Plaintiff fails to allege that Defendants used fraudulent or coercive means to entice Plaintiff to engage in a sex act with Mr. Merrin or any of the aforementioned "senior leaders." In contrast, in *Ardolf v. Weber*, 332 F.R.D. 467, at *4 ( 2019), this Court found that plaintiff had sufficiently pled fraud when she alleged that, while molesting her, defendant made comments such as, "just relax and you'll go far in this industry…you just need a little help from me" and "how far are you willing to go? Just…let loose if [you] want[] to make it to the top." Once again, Plaintiff's allegations are insufficient to prove that a sex act occurred and must be dismissed.

### 2. The Alleged Facts Are Not Sufficient to Establish the "Commercial" Component of the Commercial Sex Act Element

The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591 (e) (3).  To constitute a commercial sex act, the transaction must be economic in nature.  What Plaintiff describes in her First Amended Complaint is not unlawful commercial and economic activity as proscribed by the sex trafficking statute she sues under, but is purported sexual harassment. *Cf. United States v. Morrison*, 529 U.S. 598, 613, 120 S. Ct. 1740, 1751 (2000) ("Gender-motivated crimes of violence are not, in any sense of the phrase, economic activity.")

In *Noble*, Judge Robert Sweet considered whether promises of a lucrative film role and a modeling meeting which were knowingly false and which were made for sexual purposes were sufficient to constitute a commercial sex act. 335 F. Supp. 3d, at 515.  The Court held that they were.  That case involved Harvey Weinstein who, the Court found, had "enticed" plaintiff into a professional relationship during which he "call[ed] a Weinstein producer, who promised [plaintiff] 'they would work with her,' "promise[ed] a meeting with the Tess modeling agency," and "twice promised that 'everything [would] be taken care of…if [she] just relaxed [and complied with Weinstein's sexual assault]." *Id.* at 518.  "What proved to be empty promises of a film role and a

modeling meeting were more than enough to arouse 'hope and desire' in [plaintiff], an aspiring actress and model." *Id.* at *17; *see also*; *Canosa v. Ziff*, No. 18 Civ. 4115 (PAE), 2019 WL 498865, at *23 (S.D.N.Y. Jan. 28, 2019) (finding that a young producer's allegations that Weinstein sexually abused her under the false pretense of conducting business meetings and promoting her career "comfortably falls within the scope of the TVPA"); *Geiss v. Weinstein Co. Holdings LLC*, et al., 383 F.Supp.3d 156 (S.D.N.Y. 2019) (Judge Alvin Hellerstein found that actresses plausibly alleged that H. Weinstein enticed them to engage in commercial sex actions in violation of the TVPA using promises of career advancement).

In contrast, Plaintiff's FAC is completely devoid of allegations that anything of value, including any promise of career advancement, was given to Plaintiff and deliberately accepted in exchange for any sex act.  The closest the FAC comes to such an allegation is a stray comment purportedly made by Liquidnet's Head of Sales that "some women would not care and [would] just be with [Mr. Merrin] to get ahead because he has a lot of money." (FAC ¶ 18).  Such an allegation is not sufficient to plead the commercial sex act element under the TVPA. Moreover, unlike the plaintiff in *Noble*, Plaintiff here was not "enticed" to join Liquidnet with promises of lucrative benefits which were premised on her performing a sex act.  By her own admission, Plaintiff joined Liquidnet on her own accord after working with Liquidnet on the client-side for four years. (FAC ¶ 11).  Plaintiff merely asserts that she continued to be "polite" to her boss as he "controlled" her future at the Company.  (FAC ¶ 40).  However, engaging in a "polite" relationship with a defendant is not comparable to engaging in a commercial sex act under section 18 U.S.C. § 1591 (e)(3).

### B.    The TVPA Claims Against Liquidnet Fail

In addition to the above, Plaintiff's claims under the TVPA should be dismissed because she fails to plead the elements of 18 U.S.C. § 1595(a) against Liquidnet.  These elements require

that Liquidnet knowingly (1) participated in a sex-trafficking venture; (2) benefitted from [its] participation in this venture; (3) and knew or should have known that [this venture] was engaged in violation of the TVPA. *Noble v. Weinstein*, 335 F. Supp. 3d, at 523-24. Plaintiff must allege "specific conduct that furthered the sex trafficking venture. Such conduct must have been undertaken with the knowledge, or in reckless disregard of the fact, that it was furthering the alleged sex trafficking venture." *Id.* at 524. The Amended Complaint fails to plead even a single element.

### 1.   Plaintiff Fails to Plead the "Participation" Element

"[P]articipation in a venture" requires that "a defendant actually participate[s in] and commit[s] some 'overt act' that furthers the sex trafficking aspect of the venture." *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) ("§ 1591(a)(2) targets those who participate in sex trafficking.")  Without that limitation, the TVPA "would create 'a vehicle to ensnare conduct that the statute never contemplated." *Id.* In *Noble v. Weinstein*, Judge Sweet applied this reasoning to Robert Weinstein when holding that liability could not be established "by association alone," and that plaintiff must have "allege[d] specific conduct that furthered the sex trafficking venture." *Noble*, 335 F. Supp.3d, at 524 (granting motion to dismiss TVPA claim against Robert Weinstein, Harvey Weinstein's brother).

The Amended Complaint does not allege any sex acts, let alone participation in a sex trafficking venture.  Plaintiff does not allege that Liquidnet took part in acts of sex trafficking allegedly committed by Mr. Merrin or any other senior leader. Rather, her theory of liability is vague, at best, and appears to rest on Liquidnet's alleged failure to do enough to thwart such alleged acts. (FAC ¶ 25).  For example, Plaintiff alleges that Liquidnet ignored her request that it implement sexual harassment training and that it took over four months to implement such training. (FAC ¶ 26).  Putting aside the inconsistency of this allegation, in essence, the FAC alleges that

Liquidnet permitted Mr. Merrin and the other "senior leaders" to continue their alleged conduct rather than address Plaintiff's allegedly legitimate concerns.

However, a "defendant's 'mere negative acquiescence'" is not enough to establish participation under the TVPA, and there is no liability for those who "turn a blind eye" to sex trafficking, even if they derive benefit from it. *See United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) (requiring actual participation in "venture" involving sex trafficking under TVPA). What matters is whether the defendant "engaged in some aspect of the sex trafficking along with [the alleged harasser]". *Id.*; *see also Noble*, 335 F. Supp. 3d, at 524("In other words, some participation in the sex trafficking act itself must be shown.")

For example, in *Canosa*, this Court found that the amended complaint sufficiently alleged that the TWC Companies used "specific means and methods…to facilitate Weinstein's sexual assaults and to cover them up afterwards." 2019 WL 498865, at *24..  Specifically, plaintiff's amended complaint alleged that the TWC Companies "maintained women on their payroll whose responsibilities include[ed] introducing Weinstein to young women and covering up his assaults…[and that] although the TWC Companies knew that Weinstein's recurrent practice — indeed, pattern, was to lure women like [plaintiff] into pretextual meetings and then subject them to forced sexual acts, the companies nevertheless continued to pay for and facilitate Weinstein's interstate and foreign travel, on which trips some assaults…occurred." *Id.* at *23.

Unlike *Canosa*, where defendant TWC Companies was found to have assisted Mr. Weinstein in procuring and assaulting victims, Plaintiff's FAC here contains absolutely no allegations that any Liquidnet directors or officers helped "procure" potential victims for Mr. Merrin or any of the other alleged harassers.  Furthermore, the FAC is completely devoid of any allegation that Liquidnet employees attempted to "cover up" any of the alleged behavior.  To the

contrary – the FAC pleads that when Plaintiff complained of the alleged misconduct, Liquidnet's General Counsel and Head of Operations reassured her that they would take action and speak with Mr. Merrin about his behavior. (FAC ¶¶ 24-26, 30).

Thus, Plaintiff has not (and cannot) plead the "participation" element of beneficiary liability.  For this reason alone, Plaintiff's claim against Liquidnet should be dismissed.

### 2.    Plaintiff Fails to Plead the "Benefits" Element

Plaintiff also fails to plead the "benefits" element of a TVPA claim.  Specifically, Plaintiff has not alleged that Liquidnet "knowingly benefit[ed]…from participation" in a sex trafficking venture.  *See* 18 U.S.C. 1595(a); *see also Geiss v. Weinstein Co. Holdings LLC, et al*. 383 F.Supp.3d 156..   Under the statute, "knowingly benefitted" from means not only receiving a financial benefit (*i.e.,* "receiving anything of value…") but also that the defendant understood the connection between that benefit and the defendant's participation in the trafficking venture. *Geiss v. Weinstein Co. Holdings LLC*, et al. 383 F.Supp.3d at 167.

The FAC does not identify any cognizable benefits to Liquidnet arising from Mr. Merrin's alleged misconduct or the alleged misconduct that flowed from the "senior leaders at Liquidnet." (FAC ¶ 15).  Rather, the FAC vaguely implies that the alleged harassers, such as Mr. Merrin, made sexually inappropriate remarks regarding Plaintiff in the presence of peers seemingly in order to increase their own social status while at the same time humiliating Plaintiff.  (FAC  ¶¶ 20, 28, 29, 34, 35, 37, 38).  This is fatal to Plaintiff's TVPA claim as liability "cannot be established by association alone." *Noble*, 335 F. Supp.3d at 524.  Even assuming that an increase in social status could qualify as a "benefit" for the purposes of TVPA liability, Plaintiff's allegations remain deficient.  The FAC does not identify any specific benefit received by Liquidnet that resulted from the alleged misconduct against Plaintiff.  Furthermore, the FAC does not and cannot allege what

is required under the TVPA, "a causal relationship between the act" and the benefit purportedly received by the defendant.

In *Geiss*, Judge Hellerstein considered whether TWC Companies could be found liable under the TVPA for benefits received as a result of Harvey Weinstein's employment.  The Court held that Mr. Weinstein's movies and influence undoubtedly generated revenue, some of which flowed to TWC's directors and officers.  However, "the controlling question…[was] whether H. Weinstein provided any of those benefits to TWC because of TWC's facilitation of H. Weinstein's sexual misconduct."  383 F.Supp.3d at 169.  In deeming the complaint insufficient, the Court highlighted the fact that the "FAC [did] not allege that H. Weinstein secured TWC's alleged complicity in his sexual violence as a condition of his employment…Likewise, the FAC [did] not allege that any directors or officers to whom TWC paid a salary were compensated for their participation in H. Weinstein's assaults." *Id.*; but *see Ricchio v. McLean*, 853 F.3d 553, 555-56 (1st Cir. 2017) (finding TVPA liability where motel owners and operators received rental payments from a guest who they knew was holding plaintiff hostage and "grooming her for service as a prostitute.")

The same is true here.  The FAC simply contains no factual allegations to suggest a logical connection between the conduct alleged and Liquidnet's ability to make money. More fundamentally, even if Plaintiff had alleged a benefit received by Liquidnet – which she did not – she has failed to plead facts suggesting that Liquidnet knew that the benefits received were the fruits from any participation in a sex trafficking venture.  The TVPA's purpose is to compensate victims for the value of their labor, not to transform mere social relationships into sources of tort liability.  *See Noble*, 335 F. Supp. ed at 524.  Plaintiff's allegations against Liquidnet are therefore speculative and conclusory and are thus deficient to withstand a motion to dismiss.

### 3.    Plaintiff Fails to Plead the Required Scienter Regarding the "Venture"

To sufficiently plead this element, the FAC would have to sufficiently allege facts showing that Liquidnet had knowledge that the alleged venture used means of "force, fraud or coercion" to cause women to engage in "commercial sex acts." G*eiss v. Weinstein Co. Holdings LLC, et al*., 383 F.Supp.3d at 168.   The FAC is completely devoid of such allegations.   Here, the FAC's conclusory allegations that "word spread" about Mr. Merrin's alleged conduct and that the Head of Operations and General Counsel said they "would speak" with Mr. Merrin are patently insufficient with respect to Liquidnet's knowledge or liability.

Here, as in other cases in which a TVPA claim has been dismissed, "the amended complaint, like the original complaint, does not allege that [Liquidnet's Board of Directors] were present for any of the alleged [misconduct], were told about [it] before or after [it] occurred, or knew that…plaintiff [was] afraid of [the alleged harasser]; nor does it allege anything similar, which might show knowledge or reckless disregard." *Lawson v. Rubin*, 17-CV-6404, 2018 WL 2012869, at * 12 (E.D.N.Y. Apr. 29, 2018).   Moreover, the FAC does not allege facts supporting the conclusion that any Board member or Individual Director of Liquidnet knew of Mr. Merrin's purported propensity to engage in sexual banter.   Further, although the FAC contains vague allegations that certain colleagues felt that Mr. Merrin's actions were "inappropriate" (FAC ¶¶ 30-31), there are no allegations to support the conclusion that Defendants participated in the sex trafficking venture in any way such as by conceal[ing] their knowledge of Mr. Merrin's conduct and/or facilitating Mr. Merrin's alleged pattern of harassing women. *See Canosa v. Ziff*, 2019 WL 498865, at *7  (denying motion to dismiss TVPA claim against TWC defendants where defendants facilitated Weinstein's sexual assaults through phony meetings and interviews).

Accordingly, Plaintiff's FAC fails to allege facts sufficient to support a TVPA claim against the Defendants.

### C.   PLAINTIFF'S TVPA CLAIMS THAT ACCRUED PRIOR TO NOVEMBER 8, 2009 ARE TIME-BARRED

Assuming the Court does not dismiss the TVPA claim out right, the TVPA contains an express 10-year statute of limitations, which states: "No action shall be maintained under this section unless it is commenced within 10 years after the cause of action arose." 18 U.S.C. § 1595(c). Thus, claims regarding acts that occurred more than ten years prior to the Plaintiff's filing a complaint are time-barred.  In the present case, Plaintiff filed her Complaint on November 8, 2019.  Therefore, all claims that occurred prior to November 8, 2009 are untimely under the TVPA and must be dismissed.

Plaintiff alleges the following instances of sexual harassment, all of which occurred prior to November 8, 2009.  Thus, they are untimely and should be dismissed: (i) in or around 2008 or 2009, Plaintiff's supervisor "lavished unwanted praise on [Plaintiff's] appearance and personality." (FAC ¶ 39-40); (ii) in the summer of 2009, her supervisor learned that she had a boyfriend and "stopped speaking" to her for a week and "subsequently became cool and less friendly" towards Plaintiff (FAC ¶40); (iii) in or around winter 2009, Liquidnet's Chief Operating Officer invited her out for a drink during which time he propositioned her to have an affair (FAC ¶ 33); (iv) between some date in 2009 and 2011, Liquidnet's Head of Member Services asked Plaintiff out multiple times, including inviting her to his beach house. (FAC ¶ 34).  Accordingly, to the extent the TVPA claims remain, the events that were alleged to have occurred 10 years before the filing of the Amended Complaint are time-barred.

## V.   PLAINTIFF FAILS TO STATE A CLAIM OF DISCRIMINATION AGAINST LIQUIDNET OR SETH MERRIN

A plaintiff alleging employment discrimination under the NYSHRL and NYCHRL has the initial burden to plead a *prima facie* case of discrimination.  To meet this burden, a plaintiff must plead that "(1) she is a member of a protected class; (2) she was qualified to hold the position; (3)

she was terminated from employment or suffered another adverse employment action; and (4) the discharge or other adverse action occurred under circumstances giving rise to an inference of discrimination." *Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 304 (2004)*. Plaintiff fails to meet her initial burden with regard to her gender discrimination claims against Defendants Merrin or Liquidnet.

Even the most generous reading of the FAC reveals that under no set of facts can Plaintiff allege a claim of gender discrimination. Plaintiff's FAC does not allege that Defendants, or anyone else, took <u>any</u> adverse actions <u>because of Plaintiff's gender</u>. At most, she alleges only that she was "far from the only woman sexually harassed by Merrin." (FAC ¶ 32). *Smith v. AVSC Intern., Inc.,* 148 F.Supp.2d 302, 309 (S.D.N.Y. 2001) ("At a minimum, both the City and State HRL require a plaintiff to allege that the defendant engaged in a discriminatory act against the plaintiff in order to withstand a motion to dismiss.") Even if Mr. Merrin's, or any other senior leader's, actions towards Plaintiff were motivated based on her gender, Plaintiff has not alleged how Mr. Merrin's alleged comments led to the alleged discrimination.

Plaintiff's subjective belief is not, in itself, evidence of discrimination. *See Scott-Robinson v. City of New York*, No. 15-CV-09703 (NRB), 2016 WL 7378775, at *5 (S.D.N.Y. Dec. 15, 2016) (Plaintiff's belief that she was "insulted, humiliated and upset by…discrimination and retaliation" was "insufficient under the NYCHRL's objective standard."; *See, e.g., Mendez v. Starwood Hotels & Resorts Worldwide, Inc*., 746 F. Supp. 2d 575, 595 (S.D.N.Y. 2010); *see also Billings v. Town of Grafton*, 515 F.3d 39, 53 (1st Cir. 2008) ("[A]n employee's displeasure at a personnel action cannot, standing alone, render it materially adverse." Plaintiff's unsupported and speculative statements as to Defendants' animus is insufficient to survive a 12(b)(6) motion to dismiss. *See Fattoruso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 577 (S.D.N.Y. 2012), aff'd,

525 F. App'x 26 (2d Cir. 2013) (finding that where "there is no indication that plaintiff was discriminated against based upon [her] gender…a claim for gender discrimination must fail under the NYCHRL.") Simply being a member of a protected class does not state a claim of discrimination.  Plaintiff must indicate how her gender "played any role" in the decisions she alleges were discriminatory. *Mauze v. CBS Corp*., 340 F. Supp. 3d 186, 209 (E.D.N.Y. 2018) (finding that even under the more liberal NYCHRL, Plaintiff failed to demonstrate that the allegedly discriminatory incidents occurred "because of her protected characteristic.")

## VI.   PLAINTIFF FAILS TO STATE A CLAIM OF RETALIATION UNDER NEW YORK STATE OR CITY LAW

In order to plead a retaliation claim under state and city law, Plaintiff must allege that she suffered an adverse act because of alleged protected activity.  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir.2013*)*

For purposes of this motion, Defendants concede that Plaintiff has adequately plead that she engaged in protected activity.  Plaintiff alleges that in or around February 2018, she reported to her supervisor that she "had to field inappropriate comments from senior leadership… [and] that she was concerned about what was happening to other women at Liquidnet…" (FAC ¶ 25).  However, she fails to plead that anything happened to her as a result of this complaint.  Here, Plaintiff alleges the following adverse acts, which she states proves retaliation: (i) Liquidnet instituted a company-wide arbitration policy and Plaintiff chose to voluntarily resign rather than be bound by the arbitration policy; (ii)  her supervisor "refused to have further discussions about her potential for advancement"; (iii) on or around August 21, 2019, her supervisor disclosed to her the Company's plans for office-wide restructuring; and (iv) her supervisor urged Plaintiff to "start new and start over…[because Plaintiff didn't] seem happy." (FAC ¶¶ 43-46).  These incidents do

not constitute an adverse action and do not satisfy the standards required to state a claim of retaliation.

First, Plaintiff does not allege any facts suggesting that these events occurred because of her complaint to Liquidnet's Global Head of Human Resources (Plaintiff's supervisor).  Therefore, she does not establish the causal connection between her complaint and the alleged adverse acts. Thus, the Court should dismiss Plaintiff's retaliation claims (Causes of Action Three and Five) because the facts alleged do not "manifest any cause of action cognizable at law." *McGill v. Parker*, 179 A.D.2d 98, 105 (1st Dep't 1992) (quoting *Guggenheimer v. Ginzburg,* 43 N.Y.2d 268, 275 (1977)) (A motion to dismiss should be granted unless "from [the pleading's] four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law.")

Second, Plaintiff's retaliation theory regarding Liquidnet's facially neutral arbitration policy is meritless. (FAC ¶¶ 48-58).  Plaintiff's argument fails for two reasons.  First, the implementation of an arbitration policy is not a materially adverse employment action.  Second, Plaintiff cannot establish that the implementation of the arbitration policy was *because of* her complaints.

The gravamen of Plaintiff's retaliation theory is that Liquidnet's implementation of its arbitration policy was a materially adverse action. However, simply implementing an arbitration policy is not retaliatory.  In fact, the Supreme Court has established the standard for determining whether an employer has engaged in a materially adverse action and Plaintiff's theory does not meet the threshold. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006).  In *Burlington*, the Court stated that the statutory anti-retaliation "provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee ... mean[ing]

that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  548 U.S. at 57.  Here, Plaintiff cannot point to any case law that will support her claim that an arbitration policy can be considered retaliatory.  This is because the U.S. Supreme Court has made clear that an agreement to arbitration *does not* deprive a party of substantive or procedural rights – it merely establishes an alternate forum for adjudicating substantive rights. *American Exp. v. Italian Colors Restaurant*, 570 U.S. 228, 234, 133 S. Ct. 2304, 2310 (2013).

In the FAC, Plaintiff appears to argue that she has a right to litigate her federal, state and city claims in court and that the arbitration policy would have eliminated that supposed right. (FAC ¶ 54).  However, here, the arbitration policy did not deprive Plaintiff of any substantive or procedural right.   In fact, it expressly preserved Plaintiff's right to pursue her claims of discrimination or retaliation with the E.E.O.C., the Department of Labor or any equivalent state or local administrative agency.  Indeed, the arbitration policy even provides that Liquidnet will pay the costs of arbitration – requiring Plaintiff to pay only an amount equivalent to the court filing fee.  In sum, the arbitration policy simply moved the resolution of disputes from a judicial to an arbitral forum, which preserves all of an employee's procedural and substantive rights.  Thus, it cannot be held that the implementation of such was a materially adverse act against Plaintiff.

Plaintiff's retaliation theory also fails as a matter of law because Plaintiff has not alleged that the implementation of the arbitration policy was caused by Plaintiff's protected activity.  To show retaliation, an employee "must establish that his or her protected activity was but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 363, 133 S. Ct. 2517, 2543 (2013) (Title VII, same standard as NYSHRL).  Plaintiff cannot do so.

Here, it is undisputed that on November 6, 2019, Liquidnet distributed the arbitration policy to *all* Liquidnet employees, including those not engaged in any alleged protected activity. (FAC ¶ 48).  Two days later, Plaintiff filed suit in this Court and notified Liquidnet that she did not intend to be bound by the Company-wide arbitration policy. (FAC ¶ 56).  When the Company reminded Plaintiff that the policy would apply to all continuing employees without exception, Plaintiff chose to voluntarily resign her employment. (FAC ¶¶ 57-58).  The theory that Liquidnet distributed its arbitration policy in retaliation of Plaintiff's alleged complaints to her supervisor – occurring in February 2018 – or Plaintiff's complaints through counsel – in September 2019 – goes beyond reason.

Accordingly, Defendants' respectfully request that Plaintiff's retaliation claims be dismissed.

## VII. TO THE EXTENT PLAINTIFF'S CIVIL CLAIMS REMAIN, THEY ARE TIME-BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS AND MUST BE DISMISSED

### A. Plaintiff's NYSHRL and NYCHRL Claims that Accrued Prior to November 8, 2016 are Time-Barred

In the event the Court does not dismiss Plaintiff's NYSHRL and NYCHRL claims, those claims are governed by a three-year statute of limitations.  (*Butts v. New York City Dep't of Hous. Pres. & Dev.*, Case No. 00-CV-6307, 2007 U.S. Dist. LEXIS 6534 at *24-25 (S.D.N.Y. Jan 29, 2007).  Accordingly, any claims that accrued prior November 8, 2016, three years from the date Plaintiff commenced this action, must be dismissed.

Plaintiff alleges the following instances of sexual harassment, all of which occurred prior to November 8, 2016: (i) in or around 2008 or 2009, Plaintiff's supervisor "lavished unwanted praise on [Plaintiff's] appearance and personality." (FAC ¶ 39-40); (ii) in the summer of 2009, her supervisor learned that she had a boyfriend and "stopped speaking" to her for a week and

"subsequently became cool and less friendly" towards Plaintiff (FAC ¶41); (iii) in or around winter 2009, Liquidnet's Chief Operating Officer invited her out for a drink during which time he propositioned her to have an affair (FAC ¶ 33); (iv) between some date in 2009 and 2011, Liquidnet's Head of Member Services asked Plaintiff out multiple times, including inviting her to his beach house. (FAC ¶ 34); (v) in or around March 2014, Plaintiff's supervisor reacted in an "upset and accusatory fashion" when finding out that Plaintiff was seeing another man (FAC ¶ 42); (vi) in or around 2014, Mr. Merrin asked Plaintiff "What do you do for sex?" (FAC ¶ 17); and (vii) in or around December 2014, Mr. Merrin asked Plaintiff "Are you coming home with me tonight?...Are you ever going to come home with me" (FAC ¶ 20). Even if Plaintiff's allegations could be proven true, which they cannot, Plaintiff's allegations fall outside the applicable statute of limitations period and so are untimely.

## VIII.  CONCLUSION

For the reasons and arguments set forth and detailed above, Defendants respectfully request that the FAC be dismissed in its entirety, with prejudice, pursuant to Rule 12(b)(6).

Date:   December 27, 2019                                    LITTLER MENDELSON, P.C.
        New York, New York

                                        By:        _/s/A. Michael Weber_
                                                   A. Michael Weber
                                                   Emma J. Diamond
                                                   900 Third Avenue
                                                   New York, New York  10022.3298
                                                   212.583.9600

                                                   *Attorneys for Defendants*