UNITED STATES DISTRCT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARY CORRADINO,

      Plaintiff,

  v.

LIQUIDNET HOLDINGS, INC. AND SETH
MERRIN,

      Defendants.

ECF CASE

Civil Docket No. 1:19-cv-10434 (LGS)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF
CORRADINO'S SECOND AMENDED COMPLAINT**

---

LITTLER MENDELSON, P.C.
A. Michael Weber
Rina Bersohn
Emma J. Diamond
900 Third Avenue
New York, New York 10022
(212) 583-9600

*Attorneys for Defendants*

TABLE OF CONTENTS

PAGE

I.    PRELIMINARY STATEMENT ...................................................................... 1

II.    FACTUAL ALLEGATIONS ......................................................................... 1

III.    STANDARD OF REVIEW ......................................................................... 3

IV.    ARGUMENT .............................................................................................. 4

    A.    CORRADINO HAS FAILED TO PLEAD A VIABLE CLAIM FOR
        RELIEF UNDER THE TRAFFICKING VICTIMS PROTECTION ACT .......... 4

        1.    Plaintiff Does Not Allege that Force or Fraud was Used to Compel
            Her to Participate in a Sex Act .................................................................... 5

        2.    The Facts Alleged Are Insufficient to Establish the "Commercial"
            Component of the Commercial Sex Act Element of a TVPA Claim ........ 6

        3.    The TVPA Claims Against Liquidnet Fail ................................................. 8

    B.    PLAINTIFF FAILS TO STATE A CLAIM OF SEX DISCRIMINATION
        AGAINST LIQUIDNET OR SETH MERRIN .................................................. 10

    C.    PLAINTIFF CANNOT STATE A CLAIM FOR HOSTILE WORK
        ENVIRONMENT ....................................................................................... 12

        1.    Plaintiff Fails to State A Claim of Hostile Work Environment
            Under Federal and State Law ...................................................................... 12

        2.    Plaintiff Fails to State a Claim of Hostile Work Environment
            Under the NYCHRL ................................................................................... 15

    D.    PLAINTIFF FAILS TO STATE A CLAIM OF RETALIATION ...................... 17

        1.    Plaintiff Fails to State a Claim of Retaliation Under Title VII or the
            NYSHRL ..................................................................................................... 17

        2.    Plaintiff Fails to State a Claim of Retaliation Under the NYCHRL .............. 19

    E.    TO THE EXTENT PLAINTIFF'S CIVIL CLAIMS ARE TIME-
        BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS,
        THEY MUST BE DISMISSED ...................................................................... 20

    V.    CONCLUSION ........................................................................................... 21

TABLE OF AUTHORITIES

PAGE

## Cases

*Alfano v. Costello*,
    294 F.3d 365 (2d Cir. 2002)..............................................................................12, 13

*Am. Express v. Italian Colors Rest.*,
    133 S. Ct. 2304 (2013)......................................................................................19, 20

*Ardolf v. Weber*,
    332 F.R.D. 467 (S.D.N.Y. 2019) ............................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................4

*Bickerstaff v. Vassar College*,
    196 F.3d 435 (2d Cir. 1999)...................................................................................11

*Bright-Asante v. Saks & Company, Inc.*,
    242 F. Supp. 3d 229 (S.D.N.Y. 2017)....................................................................11

*Brown v. Montefiore Med. Ctr.*,
    No. 18-cv-03861 (PGG), 2019 U.S. Dist. LEXIS 78915 (May 8, 2019) ...............19

*Burlington N. & Santa Fe Ry. v. White*,
    548 U.S. 53 (2006).................................................................................................19

*Campbell v. Cellco Partnership*,
    860 F. Supp. 2d 284 (S.D.N.Y. 2012)....................................................................15

*Canosa v. Ziff*,
    No. 18 Civ. 4115 (PAE), 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019)....................6

*David v. Weinstein Co. LLC*,
    431 F. Supp. 3d 290 (S.D.N.Y. 2019)......................................................................7

*Distasio v. Perkin Elmer Corporation*,
    157 F.3d 55 (2d Cir. 1998).....................................................................................14

*Fattoruso v. Hilton Grand Vacations Co., LLC*,
    873 F. Supp. 2d 569 (S.D.N.Y. 2012), *aff'd,* 525 F. App'x 26 (2d Cir. 2013)........12

TABLE OF AUTHORITIES
(CONTINUED)

Cases

*Figueroa v. KK Sub II, LLC*,
   289 F. Supp. 3d 426 (W.D.N.Y. 2018) ..................................................................................14

*Forrest v. Jewish Guild for the Blind*,
   3 N.Y.3d 295 (2004) ............................................................................................................17

*Geiss v. Weinstein Co. Holdings LLC*,
   383 F. Supp. 3d 156 (S.D.N.Y. 2019)............................................................................7, 9, 10

*Gregg v. N.Y. State Dep't of Taxation & Fin.*,
   No. 97-cv-1408, 1999 WL 225534, 1999 U.S. Dist. LEXIS 5415 (S.D.N.Y.
   Apr. 15, 1999) ......................................................................................................................14

*Harris v. Forklift Sys.*,
   510 U.S. 17 (1993) ...............................................................................................................13

*Harris v. Mills*,
   572 F.3d 66 (2d Cir. 2009)......................................................................................................4

*Harris v. NYU Langone Med. Ctr.*,
   2013 WL 3487032 (S.D.N.Y. July 9, 2013) ........................................................................15

*Holohan v. Newmark & Co. Real Estate, Inc.*,
   No. 18-CV-6275 (AJN), 2019 WL 4743883 (S.D.N.Y. Sept. 16, 2019)..........................13, 14

*Ifill v. United Parcel Serv.*,
   No. 04-CV-5963, 2005 WL 736151 (S.D.N.Y. Mar. 29, 2005) ..............................................1

*Kessler v. Westchester Cty. Dep't of Soc. Servs.*,
   461 F.3d 199 (2d Cir. 2006)..................................................................................................17

*Keystone Auto. Indus., Inc. v. Montalvo*,
   No. 14-cv-1637, 2014 WL 3696266 (E.D.N.Y. July 24, 2014)...............................................4

*Li v. Educ. Broad. Corp.*,
   Index No. 115948/2010, 2011 N.Y. Misc. LEXIS 3522 (N.Y. Sup. Ct. June
   30, 2011) ..............................................................................................................................16

*Littlejohn v. City of N.Y.*,
   795 F.3d 297 (2d Cir. 2015)..................................................................................................11

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

Cases

*Lucas v. S. Nassau Cmts. Hosp.*,
 54 F. Supp. 2d 141 (E.D.N.Y.1998) .................................................................15

*Magnoni v. Smith & Laquercia, LLP*,
 701 F. Supp. 2d 497 (S.D.N.Y.2010).................................................................16

*Makinen v. City of N.Y.*,
 167 F. Supp. 3d 472 (S.D.N.Y. 2016).................................................................11

*Mauze v. CBS Corp.*,
 340 F. Supp. 3d 186 (E.D.N.Y. 2018) ...............................................................12

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
 715 F.3d 102 (2d Cir. 2013)...............................................................................11

*Minckler v. United Parcel Serv., Inc.*,
 132 A.D.3d 1186, 19 N.Y.S.3d 602 (2015) ......................................................15

*Noble v. Weinstein*,
 335 F. Supp. 3d 504 (S.D.N.Y. 2018).......................................................... *passim*

*Patane v. Clark*,
 508 F.3d 106 (2d Cir. 2007)...............................................................................12

*Paul v. Postgraduate Ctr. for Mental Health*,
 97 F. Supp. 3d 141 (E.D.N.Y. 2015) .................................................................13

*Perry v. Ethan Allen, Inc.*,
 115 F.3d 143 (2d Cir. 1997)...............................................................................13

*Redd v. N.Y. State Div. of Parole*,
 678 F.3d 166 (2d Cir. 2012)...............................................................................14

*Ricchio v. McLean*,
 853 F.3d 553 (1st Cir. 2017)..............................................................................10

*Robinson v. Purcell Constr. Corp.*,
 859 F. Supp. 2d 245 (N.D.N.Y. 2012)...............................................................13

*Russo v. New York Presbyterian Hosp.*,
 972 F. Supp. 2d 429 (E.D.N.Y. 2013) ...............................................................16

iii

TABLE OF AUTHORITIES
(CONTINUED)

Cases

*Sanderson-Burgess v. City of N.Y.*,
   2016 NY Slip Op 32007(U), 2016 N.Y. Misc. LEXIS 3871 (Sup. Ct. Queens
   Co. Sept. 8, 2016) ....................................................................................................16

*Smith v. AVSC Intern., Inc.*,
   148 F. Supp. 2d 302 (S.D.N.Y. 2001) ......................................................................11

*Spina v. Our Lady of Mercy Med. Ctr.*,
   No. 97-cv-4661-RCC, 2003 WL 22434143 (S.D.N.Y. Oct. 3, 2003) .....................13

*Tulino v. City of N.Y.*,
   No. 15-CV-7106, 2016 U.S. Dist. LEXIS 66012 (S.D.N.Y. May 19, 2016) ..........18

*United States v. Afyare*,
   632 F.App'x 272 (6th Cir. 2016) ..........................................................................8, 9

*United States v. Evans*,
   476 F.3d 1176 (11th Cir.), cert. denied, 552 U.S. 878 (2007) ..................................4

*Walker v. Schult*,
   717 F.3d 119 (2d Cir. 2013)........................................................................................3

*Wells–Williams v. Kingsboro Psychiatric Ctr.*,
   No. 03-CV-134 (CBA), 2007 WL 1011545 (E.D.N.Y. Mar. 30, 2007)..................14

*Williams v. N.Y.C. Hous. Auth.*,
   872 N.Y.S.2d 27 (1st Dep't 2009) ...........................................................................16

**Statutes**

18 U.S.C. § 1591................................................................................................1, 4, 5

18 U.S.C. § 1591(a) .....................................................................................................5

18 U.S.C. § 1591(e)(3).............................................................................................6, 8

18 U.S.C. § 1595................................................................................................... 1, 4

18 U.S.C. § 1595(a) ..................................................................................................8, 9

18 U.S.C. § 1595(c) ...................................................................................................21

42 U.S.C. § 2000e-5(e) ..............................................................................................20

iv

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

**Statutes**

New York City Human Rights Law ("NYCHR") .................................................................. *passim*

New York State Human Rights Law ("NYSHRL) ............................................................. *passim*

**Other Authorities**

F.R.C.P. Rule 12(b)(6) ..................................................................................................1, 3, 18, 21

N.Y.C. Admin. Code § 8-107(7) ..................................................................................................19

Defendants Liquidnet Holdings, Inc. and Seth Merrin (collectively "Defendants") submit this Memorandum of Law pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure in support of their Motion to Dismiss Plaintiff Mary Corradino's ("Plaintiff" or "Ms. Corradino") Second Amended Complaint ("SAC").[1]

## I.      PRELIMINARY STATEMENT

In her SAC, Plaintiff alleges that she experienced a hostile work environment due to her gender and that she was retaliated against by her employer once she complained.  In particular, Plaintiff has asserted claims for a violation of the Trafficking Victims Protection Act, 18. U.S.C. § 1591 and 18 U.S.C. § 1595 (collectively, "TVPA")[2] and sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). However, Plaintiff has not alleged facts sufficient to state a claim under any of these statutes.  Accordingly, as discussed in further detail below, the SAC must be dismissed in in its entirety.

## II.     FACTUAL ALLEGATIONS[3]

Liquidnet Holdings, Inc. ("Liquidnet") is a holding company specializing in global financial services and technology.  (SAC ¶ 9). Plaintiff joined Liquidnet in or around December 2006 as its Global Head of Recruiting.  (SAC ¶ 13).  She reported to the Global Head of HR.  (SAC ¶ 13).

---

[1]     A true and correct copy of Plaintiff's Second Amended Complaint is attached as Exhibit A to the Declaration of A. Michael Weber, which is filed concurrently herewith.

[2]     18 U.S.C. § 1595 confers a private right of action for violation of 18 U.S.C. § 1591.

[3]     Defendants assume that the non-conclusory facts alleged in the FAC are true solely for purposes of this motion. *Ifill v. United Parcel Serv.,* No. 04-CV-5963, 2005 WL 736151, at *1 n.1 (S.D.N.Y. Mar. 29, 2005).

Plaintiff alleges that while she was employed at Liquidnet, she was subjected to a "culture of sexual harassment" by Defendant Seth Merrin and other "senior leaders at Liquidnet." (SAC ¶ 16). Plaintiff's allegations relate to conduct that purportedly took place over a period in excess of ten years (from 2008-2019). (SAC ¶ ¶ 18 -40).

Specifically, Plaintiff alleges that in or around 2014, Mr. Merrin made comments to Plaintiff such as "what do you do for sex?" and "are you coming home with me tonight?" (SAC ¶ ¶ 18, 21). Plaintiff further alleges that in 2018, Mr. Merrin asked again whether Plaintiff was "ever coming home with [him]?" (SAC ¶ 28) and that in April of 2019, Mr. Merrin asked whether Plaintiff "was ever going to marry" him (SAC ¶ 30). Notably, the SAC is utterly devoid of any allegations that Plaintiff ever went home with Mr. Merrin, engaged in any sexual act in response to these purported solicitations, or suffered an adverse employment action as a result of her not acquiescing to these alleged demands.

Plaintiff also alleges that Mr. Merrin subjected her to "sexualized comments," which she admits were not directed at her, including that "watching Game of Thrones with [his] daughter was like watching porn with her;" that he was "having dinner with Charlize Theron over the weekend and would like to get with her;" and using the term "money shot" during a presentation (SAC ¶ ¶ 24, 29).

Plaintiff further alleges that she was encouraged by Liquidnet's Head of Europe, the Middle East and Africa and Global Head of Sales ("Global Head of Sales") at Liquidnet to date Mr. Merrin to advance her career. (SAC ¶ 19). When Plaintiff indicated that she was not interested, the Global Head of Sales allegedly stated that "some [women] would not care and [would] just be with him to get ahead because he has a lot of money." *Id.*

Plaintiff also claims that other senior leaders at Liquidnet subjected her to harassment. Such alleged incidents include Liquidnet's Chief Operating Officer, in or around the winter of 2009, allegedly asking Plaintiff to join him for a drink and then asking her if she had ever had an affair (SAC ¶ 34). In response, Plaintiff purportedly said that she '[did] not "mess around with married men." Notably, Plaintiff does not allege that she was, either implicitly or explicitly, promised anything in return should she engage in the affair.  Plaintiff also does not allege that she suffered any adverse consequences for not entertaining such an alleged proposition or that there was ever any further discussion of an affair once she communicated that she was not interested in having one. *Id.*  Plaintiff also alleges that during 2009 – 2011, Liquidnet's Head of Member Services asked her out several times, including inviting her to join him at his beach house for the weekend. (SAC ¶ 35).  Plaintiff states that he also 'complimented Corradino's appearance, intelligence, and "strength as a woman" and that he "made clear that his interest in Corradino was sexual." *Id.*  Again, Plaintiff does not allege that she would have received any benefit had she agreed to visit the Head of Member services at his beach house or that she suffered any adverse action as a result of her not accepting this invitation (or any others).  Plaintiff also alleges that she was referred to as "sexy" and was told that it looked like she would "enjoy a nice big fat Cuban." (SAC ¶¶ 38-40). Notably, Plaintiff does not allege that she engaged in any sexual act with any of her coworkers or that she experienced any adverse employment action as a result of her rebuffing any purported advances.

## III.    STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's factual allegations as true and construe those allegations in the manner most favorable to the plaintiff. *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir. 2013).  However, a court is not required to accept as

true legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments. *Harris v. Mills,* 572 F.3d 66, 71-72 (2d Cir. 2009) (*citing Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).  In addition, the plaintiff must plead sufficient factual matter to render the legal claim plausible, not just merely possible. *Keystone Auto. Indus., Inc. v. Montalvo,* No. 14-cv-1637, 2014 WL 3696266, at *2 (E.D.N.Y. July 24, 2014) (citing *Iqbal,* 556 U.S. at 679).  The Supreme Court has stressed that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  Rather, to survive a motion to dismiss, a complaint must (i) contain sufficient facts (not merely legal conclusions or recitation of necessary elements) and (ii) state a plausible-and not simply a conceivable-claim. *Id.* at 678-79.

## IV.   ARGUMENT

### A.   CORRADINO HAS FAILED TO PLEAD A VIABLE CLAIM FOR RELIEF UNDER THE TRAFFICKING VICTIMS PROTECTION ACT

Plaintiff seeks to impose civil liability against Liquidnet and its former Chief Executive Officer, Seth Merrin, pursuant to a federal statute that criminalizes sex trafficking. 18 U.S.C. §§ 1591, 1595.  However, the TVPA, by prohibiting the "sex trafficking of children or by force, fraud, or coercion," is "part of a comprehensive regulatory scheme" that "criminalizes and attempts to prevent slavery, involuntary servitude, and human trafficking for commercial gain." *United States v. Evans*, 476 F.3d 1176, 1179 (11th Cir.), cert. denied, 552 U.S. 878 (2007) (noting Congress' recognition that "human trafficking, particularly of women and children in the sex industry, is a modern form of slavery, and it is the largest manifestation of slavery today").

Under the statute, victims of the conduct proscribed in 18 U.S.C. § 1591 are entitled to seek civil damages as private litigants under 18 U.S.C. § 1595.  Specifically, sanctions are provided against anyone who "knowingly" "recruits, entices, harbors, transports, provides, obtains, or

maintains by any means a person" with the knowledge that "means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means" would be employed to "cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a).

However, not all alleged sexual assaults – or even sexual harassment, as is alleged in the SAC – constitute a violation of the statute.  As set forth below, Plaintiff clearly fails to plead the essential elements to state a claim under the TVPA.  18 U.S.C. § 1591; *see also Noble v. Weinstein*, 335 F. Supp. 3d 504, 517-518 (S.D.N.Y. 2018) (outlining elements of TVPA claim).

### 1.     Plaintiff Does Not Allege that Force or Fraud was Used to Compel Her to Participate in a Sex Act

The plain language of 18 U.S.C. § 1591(a) requires Plaintiff to plausibly allege that "if things go as he planned, force, fraud or coercion will be used to cause his victim to engage in a commercial sex transaction." *Noble*, 335 F. Supp. 3d at 518 (emphasis added). In other words, "Defendant must have intended, or been aware, that the fraud and force would cause a sex act to take place." *Id.* at 519.

Plaintiff does not allege that any force or fraud was used with the intention of having her engage in a sex act.  Indeed, the allegations in the Complaint relate to one adult asking another if she would consent to a date, marriage, or potential sexual activity. There is no allegation of coercion whatsoever. "Whether the Amended Complaint plausibly alleges a causal relationship between the promises…made and the force…employed on the one hand and the sex act's occurrence on the other, is a crucial inquiry." *Id.*  Plaintiff has failed to plausibly allege that any force or fraud took place here, and indeed, has failed to allege that any sex act took place at all.

In contrast, this Court in *Noble* found that force had been established when plaintiff alleged that Harvey Weinstein ("Weinstein") "forcibly pulled [plaintiff] into the bathroom," that he "gripped her firmly," and "pulled down [her] shirt" and "forced her to masturbate him." 335 F.

5

Supp. 3d at 518-519.  Similarly, in *Canosa v. Ziff*, No. 18 Civ. 4115 (PAE), 2019 WL 498865, at

*7 (S.D.N.Y. Jan. 28, 2019), Judge Paul Engelmayer found that force has been sufficiently pled

when plaintiff alleged that Weinstein had "intimidated her into having oral sex . . . .raped her in

Malaysia . . . and forced her into a sex act in a Beverly Hills hotel." Clearly, Plaintiff's allegations

do not meet this standard.

### 2. The Facts Alleged Are Insufficient to Establish the "Commercial" Component of the Commercial Sex Act Element of a TVPA Claim

The term "commercial sex act" means "any sex act, on account of which anything of value

is given to or received by any person." 18 U.S.C. § 1591(e)(3).  To constitute a commercial sex

act, the transaction must be economic in nature. *Noble*, 335 F. Supp. 3d at 520.  The alleged

conduct that Plaintiff describes in her SAC does not constitute unlawful economic activity, as

proscribed by the sex trafficking statute at issue, but is instead simply a recitation of purported

unwanted comments.

In *Noble*, Judge Robert Sweet considered whether promises of a lucrative film role and a

modeling meeting that were knowingly false and made for sexual purposes were sufficient to

constitute a commercial sex act. 335 F. Supp. 3d, at 520-521. The Court held that they were.  That

case involved Harvey Weinstein who, the Court found, had "enticed" plaintiff into a professional

relationship during which he "call[ed] a Weinstein Company producer, who promised [plaintiff]

'they would work with her', "promise[ed] a meeting with the Tess modeling agency" and "twice

promised that 'everything [would] be taken care of…if [she] just relaxed [and complied with

Weinstein's sexual assault]." *Id.* at 517-518. "What proved to be empty promises of a film role

and a modeling meeting were more than enough to arouse 'hope and desire' in [plaintiff], an

aspiring actress and model." *Id.* at 517; *see also*; *Canosa*, 2019 WL 498865 at *23 (finding that a

young producer's allegations that Weinstein sexually abused her under the false pretense of

conducting business meetings and promoting her career "comfortably falls within the scope of the TVPA"); *Geiss v. Weinstein Co. Holdings LLC*, et al. 383 F. Supp. 3d 156 (S.D.N.Y. 2019) (Judge Alvin Hellerstein found that actresses plausibly alleged that Harvey Weinstein enticed them to engage in commercial sex actions in violation of the TVPA using promises of career advancement.); *David v. Weinstein Co. LLC,* 431 F. Supp. 3d 290, 301 (S.D.N.Y. 2019) (finding a commercial sex act had occurred where Weinstein "lure[d]" Plaintiff into a hotel "with 'the promise of a role' in one of his productions," coupled with Weinstein's "pattern of doing the same with other women over decades"); *Ardolf v. Weber*, 332 F.R.D. 467, 475 (S.D.N.Y. 2019) (Plaintiff sufficiently pled fraud where she alleged that, while molesting her, defendant made comments such as, "just relax and you'll go far in this industry…you just need a little help from me" and "how far are you willing to go? . . . [J]ust…let loose if [you] want[] to make it to the top.")

The facts alleged by Plaintiff in the SAC are starkly different. The SAC is completely devoid of allegations that anything of value, including promises of career advancement, was offered to Plaintiff and accepted by her in exchange for any sex act. The closest the SAC comes to such an allegation is a stray comment purportedly made by Liquidnet's Head of Sales that "some women would not care and [would] just be with [Mr. Merrin] to get ahead because he has a lot of money." (SAC ¶ 19). Such an allegation is wholly insufficient to plead the commercial sex act element under the TVPA. Moreover, unlike the plaintiff in *Noble*, Plaintiff here was not "enticed" to join Liquidnet with promises of lucrative benefits which were premised on her performing a sex act. By her own admission, Plaintiff joined Liquidnet on her own accord after working with Liquidnet as an external recruiter for four years. (SAC ¶ 12). Nowhere in the Complaint does Plaintiff allege that she was promised advancement if she engaged in a sexual act with anyone at

Liquidnet.  Thus, she has not alleged the existence of a commercial sex act as required under 18 U.S.C. § 1591 (e)(3).

### 3.     The TVPA Claims Against Liquidnet Fail

In addition to the foregoing, Plaintiff's claims under the TVPA should be dismissed because she fails to plead the elements of 18 U.S.C. § 1595(a) against Liquidnet.  To be held liable under the TVPA, Liquidnet must have (1) knowingly participated in a sex-trafficking venture; (2) benefitted from [its] participation in this venture; and (3) knew or should have known that [this venture] was in violation of the TVPA.  *Noble*,  335 F. Supp. 3d at 523-524. Plaintiff must allege "specific conduct [by the company] that furthered the sex trafficking venture. Such conduct must have been undertaken with the knowledge, or in reckless disregard of the fact, that it was furthering the alleged sex trafficking venture." *Id.*  The SAC fails to sufficiently plead even a single element of such a claim.

#### a.     Plaintiff Fails to Plead the "Participation" Element

"[P]articipation in a venture" requires that "a defendant actually participate and commit some 'overt act' that furthers the sex trafficking aspect of the venture." *United States v. Afyare*, 632 F.App'x 272, 283, 286 (6th Cir. 2016) ("§1591(a)(2) targets those who participate in sex trafficking.")  In *Noble v. Weinstein*, Judge Sweet applied this reasoning to Robert Weinstein when holding that liability could not be established "by association alone," and that plaintiff must have "allege[d] specific conduct that furthered the sex trafficking venture." *Noble*, 335 F. Supp. 3d at 524 (granting motion to dismiss TVPA claim against Robert Weinstein, Harvey Weinstein's brother). The SAC does not (and cannot) plead that Liquidnet participated in a sex trafficking venture.  First, Plaintiff does not allege that Liquidnet took active part in acts of sex trafficking allegedly committed by Mr. Merrin or any other senior leader.  While Plaintiff alleges that Liquidnet did not move quickly enough to provide training regarding sexual harassment training

(SAC § 27), any such delay is not alleged to be in furtherance of a sex trafficking venture. Indeed, a "defendant's 'mere negative acquiescence'" is not enough to establish participation under the TVPA, and there is no liability for those who "turn a blind eye" to sex trafficking, even if they derive benefit from it. *See Afyare*, 632 F. App'x at 286 (requiring actual participation in "venture" involving sex trafficking under TVPA). What matters is whether the defendant "engaged in some aspect of the sex trafficking along with [the alleged harasser]". *Id.*; *see also Noble*, 335 F. Supp. 3d at 524 ("In other words, some participation in the sex trafficking act itself must be shown.") Such is not the case here.

### b.    Plaintiff Fails to Plead the "Benefits" Element

Plaintiff also fails to plead the "benefits" element of a TVPA claim. Specifically, Plaintiff has not alleged that Liquidnet "knowingly benefit[ed]…from participation" in a sex trafficking venture. *See* 18 U.S.C. 1595(a); *see also Geiss,* 383 F. Supp. 3d at 167-168. Under the statute, "knowingly benefitted" from means not only receiving a financial benefit (*i.e.,* "receiving anything of value…") but also that the defendant understood the connection between that benefit and the defendant's participation in the trafficking venture. *Id.* The SAC does not identify any cognizable benefits to Liquidnet arising from Mr. Merrin's alleged misconduct or the alleged misconduct on the part of "senior leaders at Liquidnet." (SAC ¶ 16).

In *Geiss*, Judge Hellerstein considered whether TWC could be found liable under the TVPA for benefits received as a result of Weinstein's employment. The Court held that Mr. Weinstein's movies and influence undoubtedly generated revenue, some of which flowed to TWC's directors and officers. However, "the controlling question…[was] whether H. Weinstein provided any of those benefits to TWC because of TWC's facilitation of H. Weinstein's sexual misconduct." 383 F .Supp. 3d at 169. In deeming the complaint insufficient, the Court highlighted

the fact that the "FAC [did] not allege that H. Weinstein secured TWC's alleged complicity in his sexual violence as a condition of his employment. . . . Likewise, the FAC [did] not allege that any directors or officers to whom TWC paid a salary were compensated for their participation in H. Weinstein's assaults." *Id.* at 170; but *see Ricchio v. McLean*, 853 F.3d 553, 555-56 (1st Cir. 2017) (finding TVPA liability where motel owners and operators received rental payments from a guest who they knew was holding plaintiff hostage and "grooming her for service as a prostitute.")  Here, the SAC contains no factual allegations to the effect that any alleged harasser provided a monetary benefit to Liquidnet due to Liquidnet's purported facilitation of any alleged harassment.

> ### c.      Plaintiff Fails to Plead the Required Knowledge Regarding the "Venture"

To sufficiently plead this element, the SAC would have to sufficiently allege facts showing that Liquidnet had knowledge that an alleged venture used means of "force, fraud or coercion" to cause women to engage in "commercial sex acts." *Geiss*, 383 F. Supp. 3d at 168.  The SAC is completely devoid of any such allegations.  The SAC's conclusory allegations that "word spread" about Mr. Merrin's alleged comments  and that the Head of Operations and General Counsel said they "would speak" with Mr. Merrin are patently insufficient to state a claim that Liquidnet knew or should have known that Mr. Merrin was engaged in a sex trafficking venture in violation of the TVPA.  Accordingly, Plaintiff's TVPA claim should be dismissed because the SAC fails to allege sufficient facts in support of such a claim.

### B.      PLAINTIFF FAILS TO STATE A CLAIM OF SEX DISCRIMINATION AGAINST LIQUIDNET OR SETH MERRIN

To state a prima facie case of sex discrimination under Title VII or the NYSHRL, a plaintiff must establish that (1) the plaintiff is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) there is "at least minimal support for the proposition that [her] employer was motivated by discriminatory intent" in implementing

the adverse employment action. *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015). To establish liability for sex discrimination under the NYCHRL, a plaintiff need only demonstrate "differential treatment—that she is treated 'less well'—because of a discriminatory intent." *Makinen v. City of N.Y.*, 167 F. Supp. 3d 472, 483 (S.D.N.Y. 2016) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)), *aff'd in part and rev'd in part*, 722 F. App'x 50 (2d Cir. 2018). A plaintiff, thus, must "plead facts sufficient to support an inference that [she] has been treated less well at least in part *because of* a protected trait." *Bright-Asante v. Saks & Company, Inc.*, 242 F. Supp. 3d 229, 242 (S.D.N.Y. 2017) (internal quotation marks omitted).  Plaintiff cannot meet her burden here, as she has not alleged any connection between her sex and any alleged adverse employment action that she contends that she experienced.

Plaintiff has not alleged a viable claim of sex discrimination.  Nowhere in Plaintiff's SAC does she allege that she experienced an adverse employment action as a result of her sex.[4]  *Smith v. AVSC Intern., Inc.*, 148 F. Supp. 2d 302, 309 (S.D.N.Y. 2001) ("At a minimum, both the City and State HRL require a plaintiff to allege that the defendant engaged in a discriminatory act against the plaintiff in order to withstand a motion to dismiss.")

Plaintiff's subjective belief that she experienced discrimination is not, in itself, evidence of discrimination. *See Bickerstaff v. Vassar College*, 196 F.3d 435, 456 (2d Cir. 1999) (holding that an employee's feelings and perceptions of being discriminated against are not evidence of discrimination)(Title VII). Plaintiff's unsupported and speculative statements as to Defendants' discriminatory animus are insufficient to survive a 12(b)(6) motion to dismiss. Simply being a

---

[4]    While Plaintiff does allege that Defendants did not advance her career and that she was terminated because she would not agree to abide by an arbitration policy applicable to all US employees, Plaintiff contends that she experienced these actions in retaliation for complaints that she purportedly made.  Plaintiff does not allege that she was not further promoted or was terminated due to her sex.

member of a protected class is insufficient to state a claim of discrimination.  *See Fattoruso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 577 (S.D.N.Y. 2012) (finding that where "there is no indication that plaintiff was discriminated against based upon [her] gender…a claim for gender discrimination must fail under the NYCHRL."), *aff'd,* 525 F. App'x 26 (2d Cir. 2013) To state a viable claim for gender discrimination under Title VII, the NYSHRL, and the NYCHRL, Plaintiff must include factual allegations in her SAC that support her claim that her gender "played any role" in decisions that she alleges were discriminatory.  Plaintiff fails to do so, as she does not allege that her career was not advanced or that she was separated from her employment due to her gender (SAC, ¶¶ 44 and 58-59).  *Mauze v. CBS Corp.*, 340 F. Supp. 3d 186, 209 (E.D.N.Y. 2018) (finding that even under the more liberal NYCHRL, Plaintiff failed to demonstrate that the allegedly discriminatory incidents occurred "because of her protected characteristic.") For these reasons, Plaintiff's claims of sex discrimination under Title VII, the NYSHRL and the NYCHRL must be dismissed.

### C.   PLAINTIFF CANNOT STATE A CLAIM FOR HOSTILE WORK ENVIRONMENT

#### 1.   Plaintiff Fails to State A Claim of Hostile Work Environment Under Federal and State Law

Under Title VII and the NYSHRL, a claim of a hostile work environment must include evidence that the conduct alleged "(1) is objectively severe or pervasive - that is, . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [lawfully protected characteristic[s]]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)(internal quotation marks and citations omitted).  "In order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).  "When the

workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)(internal citations omitted).

Given the nature and timing of the comments alleged in the SAC, Plaintiff cannot possibly meet the "severe or pervasive" standard necessary in order to prevail on a Title VII or NYSHRL hostile work environment claim.  First, the conduct alleged did not take place frequently. *Holohan v. Newmark & Co. Real Estate, Inc.*, No. 18-CV-6275 (AJN), 2019 WL 4743883, at \*2 (S.D.N.Y. Sept. 16, 2019) (granting motion to dismiss on state and federal hostile work environment claim where alleged harassment, including sexualized comments, were alleged to have occurred at a rate of one to two incidents per month).  Rather, the alleged incidents of sexual harassment are alleged to have occurred *at most* once or twice per year from 2008-2019.  *See* SAC, *generally*. Thus, the alleged incidents occurred at least several months apart and are thus "sporadic" or "isolated." *See, e.g., Alfano,* 294 F.3d at 374 ("[I]ncidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'") (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)); *see also Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 182–83 (E.D.N.Y. 2015) (collecting cases to agree that "five [occurrences] over the course of roughly fourteen months ... [is] a rate of occurrence which courts [in the Second Circuit] have found to be infrequent"); *Spina v. Our Lady of Mercy Med. Ctr.*, No. 97-cv-4661-RCC, 2003 WL 22434143, at \*3 (S.D.N.Y. Oct. 3, 2003) (determining that conduct could not be construed as pervasive where the plaintiff alleged six instances of harassment over the course of approximately fifteen months); *Robinson v. Purcell Constr. Corp.,* 859 F. Supp. 2d 245, 255 (N.D.N.Y. 2012) (describing five gender based comments over two months as "sporadic offensive utterances").

Thus, Plaintiff's allegations fail to establish the requisite frequency or pervasiveness of the alleged conduct.

Moreover, severe or egregious conduct, which is also a potential element of a hostile work environment claim under federal and state law, typically involves graphic and/or extreme behavior. Exposing one's "private parts," groping, and/or forced sexual contact arguably fall within the definition of severe or egregious conduct. *Distasio v. Perkin Elmer Corporation*, 157 F.3d 55 (2d Cir. 1998). Here, it is undisputed that this type of behavior is not alleged. Rather, Plaintiff contends that she was subject to unwelcome comments during her employment with Liquidnet. That said, "occasional vulgar banter, tinged with sexual innuendo" is generally not actionable. *Figueroa v. KK Sub II, LLC,* 289 F. Supp. 3d 426, 435 (W.D.N.Y. 2018) (quoting *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 178 (2d Cir. 2012) (granting summary judgment on Title VII and NYSHRL claims of sexual harassment on the grounds that four verbal incidents did not rise to the level of a hostile work environment); *Holohan v. Newmark & Co. Real Estate, Inc.*, No. 18-CV-6275 (AJN), 2019 WL 4743883, at *3 (S.D.N.Y. Sept. 16, 2019) ("occasional sexually suggestive 'offensive utterances,'…two invasions of personal space…one instance of brief offensive touching" were held not to be "severe or pervasive" enough to "alter the conditions" of Plaintiff's employment and, thus, were not actionable under Title VII or the NYSHRL); *Wells–Williams v. Kingsboro Psychiatric Ctr.,* No. 03-CV-134 (CBA), 2007 WL 1011545, at *5 (E.D.N.Y. Mar. 30, 2007) (granting summary judgment for the defendant on a Title VII hostile work environment claim where a coworker allegedly "made obscene gestures and language using a cucumber and tomatoes," in addition to other verbal incidents and unwanted physical contact); *Gregg v. N.Y. State Dep't of Taxation & Fin.*, No. 97-cv-1408, 1999 WL 225534, at *12, 1999 U.S. Dist. LEXIS 5415 (S.D.N.Y. Apr. 15, 1999) (granting summary judgment on a Title VII

14

claim, holding that "10 to 15 allegedly inappropriate conversations ... four alleged instances of offensive touching and ... repeated invitations to meals, drinks and the like" were not sufficiently severe and pervasive); *Lucas v. S. Nassau Cmts. Hosp.*, 54 F. Supp. 2d 141, 147–48 (E.D.N.Y.1998) (denying NYSHRL hostile work environment claim where supervisor brushed against plaintiff three times, touched plaintiff three times, briefly touched plaintiff's back or shoulders five to seven other times, asked about the color of plaintiff's underwear, said plaintiff wanted to "go to bed" with her, and said "fuck you" to plaintiff on two occasions); *Minckler v. United Parcel Serv., Inc*., 132 A.D.3d 1186, 1188, 19 N.Y.S.3d 602, 605 (2015) (dismissing NYSHRL hostile work environment claim where defendant allegedly used sexually-based terms at least eight times over a four-year period, twice described a party in sexual terms, encouraged Plaintiff to purchase sexual paraphernalia, rubbed lubricant on her arm and claimed to have "ejaculated into a plate of food.")

Thus, Plaintiff's allegations are clearly insufficient to state a hostile work environment claims under Title VII and NYSHRL and must be dismissed.

### 2.     Plaintiff Fails to State a Claim of Hostile Work Environment Under the NYCHRL

To state a valid claim under the NYCHRL, a plaintiff must allege and establish discriminatory conduct that exceeds what a reasonable victim of discrimination would consider petty or trivial. *See Harris v. NYU Langone Med. Ctr.,* 2013 WL 3487032 (S.D.N.Y. July 9, 2013). Although the foregoing standard is not as stringent as the "severe or pervasive" test applicable to claims under Title VII and the NYSHRL, courts have made it abundantly clear that the NYCHRL "is not a general civility code and petty slights and trivial inconveniences are not actionable under the NYCHRL." *Campbell v. Cellco Partnership*, 860 F. Supp. 2d 284 (S.D.N.Y. 2012) (quotation marks and citations omitted).  Moreover, "isolated incidents of unwelcome verbal and physical

conduct have been found to constitute the type of 'petty slights and trivial inconveniences' that are not actionable even under the more liberal NYCHRL standard." *Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 450 (E.D.N.Y. 2013) (dismissing NYCHRL hostile work environment claim where defendant repeatedly gesticulated as if he was "grabbing a woman's breasts" and "trapped" Plaintiff "directly in front of [his] crotch" by refusing to lift his leg up as she tried to walk past.) *See e.g.*, *Magnoni v. Smith & Laquercia, LLP*, 701 F. Supp. 2d 497, 505–06 (S.D.N.Y.2010) (finding that defendant's "crude anecdote" regarding his sex life, coupled with his references to Plaintiff as "voluptuous" and touchings on Plaintiff's knee, was insufficient to sustain a NYCHRL hostile work environment claim).

Just as Plaintiff's allegations fail to amount to violations of federal and state law, they also fail to meet the NYCHRL standard. *Williams v. N.Y.C. Hous. Auth.,* 872 N.Y.S.2d 27, 78, 80 (1st Dep't 2009).  Plaintiff claims that that she was asked out on dates, was on the receiving end of a few off-color comments and received compliments regarding her intellect and "strength as a woman".  (*See SAC, generally*).  These complaints amount to nothing more than "petty slights and trivial inconveniences" that cannot sustain a claim of hostile work environment under the NYCHRL. Indeed, litigants in other actions have alleged much more egregious acts than those mentioned by Plaintiff, but were unable to sustain claims under the NYCHRL. *See e.g.*, *Sanderson-Burgess v. City of N.Y.*, 2016 NY Slip Op 32007(U), 2016 N.Y. Misc. LEXIS 3871, at *2-3, 8 (Sup. Ct. Queens Co. Sept. 8, 2016) (plaintiff's claim of sexual harassment over an 18 month period including "sexually suggestive comments," stating that Plaintiff smelled "delicious," and that on several occasions defendant "rubbed, grabbed or poked plaintiff on the face, arms, wrist, left thigh and hip" were deemed petty slights and trial inconveniences under the NYCHRL.); *Li v. Educ. Broad. Corp.*, Index No. 115948/2010, 2011 N.Y. Misc. LEXIS 3522, at **1, 14-15 (N.Y. Sup.

16

Ct. June 30, 2011) (dismissing hostile work environment claim under the NYCHRL where the defendant grabbed plaintiff's buttocks, stroked plaintiff's arm, stated "Asian skin is so soft," and said "you love it when a hot guy like me touches you").   Therefore, Plaintiff has not pled a sufficient hostile work environment claim under the NYCHRL.

### D.   PLAINTIFF FAILS TO STATE A CLAIM OF RETALIATION

#### 1.   Plaintiff Fails to State a Claim of Retaliation Under Title VII or the NYSHRL

In order to prove a retaliation claim under Title VII and the NYSHRL, a plaintiff must show "(1) she has engaged in protected activity, (2) her employer was aware that she participated in such activity, (3) she suffered an adverse employment action based upon her activity, and (4) there is a causal connection between the protected activity and the adverse action." *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 312-313 (2004); see also *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006).   To engage in protected activity, a plaintiff must "have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII." *Kessler*, 461 F.3d at 210.   Here, Plaintiff cannot prove retaliation under Title VII or the NYSHRL, as she did not experience an adverse employment action.   Indeed, while Plaintiff attempts to allege two different types of adverse employment actions – failure to promote and termination – she has not plausibly alleged either one.

In support of her allegations relating to Defendants' alleged failure to promote, Plaintiff alleges that her supervisor told others that she (Plaintiff) 'would not be a "successor" and would be leaving with a "package."' (SAC ¶ 45)  Plaintiff also alleges that her supervisor showed her a proposed restructuring plan that would reallocate some of her responsibilities to others. (SAC ¶ 46). Notably, nowhere in the SAC does Plaintiff allege that the proposed restructuring plan was ever implemented or that she was ever offered a severance "package."  Furthermore, Plaintiff does

not allege that there was any promotional opportunity available for which the firm would not consider her.  As a general mater, failure to apply for a position is generally fatal to a claim for discriminatory failure to promote. *Tulino v. City of N.Y.,* No. 15-CV-7106, 2016 U.S. Dist. LEXIS 66012, at *6 (S.D.N.Y. May 19, 2016) (granting a Rule 12(b)(6) motion to dismiss a failure to promote claim under the NYSHRL and NYCHRL).  Here, Plaintiff does not even allege that there was an open position in which she was interested.  Indeed, a plaintiff is not excused from showing that she applied for a position simply because she was discouraged from filing a formal application. *Id.* Here, Plaintiff does not allege that there was an open position that she was interested in, that she applied for the position, and that her application was rejected.  As such, Plaintiff has not alleged facts to support any sort of allegation that the firm failed to promote her, as she does not even contend that a promotional opportunity existed.

In support of her termination claim, Plaintiff contends that Liquidnet would not agree to her continuing to pursue her legal claims in court when it had instituted an arbitration policy that would bind all US employees. (SAC ¶49 – 59).  Plaintiff contends that she wrote to Liquidnet's General Counsel that 'in that case [i.e. based on Liquidnet's insistence on enforcing its arbitration policy], "Liquidnet [had] terminated [her] employment"' as '[Plaintiff] did "not consent to pursuing [her] claims in secret arbitration."' (SAC ¶ 59). Notably, Plaintiff does not allege in the SAC that Liquidnet actually terminated her employment. This is because Plaintiff affirmatively chose to resign from her employment at Liquidnet because she did not wish to be bound by its arbitration policy. (SAC ¶49 – 59).

In addition, Plaintiff's theory that Liquidnet instituted an arbitration policy that would bind all US employees in retaliation for Plaintiff's alleged complaints is meritless. (SAC ¶¶ 49-59). The implementation of an arbitration policy is not a materially adverse employment action.  In

*Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006) the Supreme Court stated that the statutory anti-retaliation "provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee . . . . mean[ing] that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." 548 U.S. at 57.  The Supreme Court has made it clear that an agreement to arbitration does not deprive a party of substantive or procedural rights – it merely establishes an alternate forum for adjudicating substantive rights. *Am. Express v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013).  Therefore, institution of an arbitration policy that covers all of Liquidnet's employees, as alleged in the Complaint, can in no way be deemed a retaliatory action.

In the SAC, Plaintiff appears to argue that she has a right to litigate her claims in court and that implementation of Liquidnet's arbitration policy would interfere with that right.  (SAC ¶ 55). However, Plaintiff acknowledges that the arbitration policy at issue permits her to have adjudicated her discrimination, harassment, and retaliation claims in an arbitral forum, yet she chose not to avail herself of that forum.  (SAC ¶¶ 49 – 57).  Since Plaintiff retained the right to have her claims adjudicated in a neutral forum that the Supreme Court has held does not curtail substantive or procedural rights, it cannot be argued that the implementation of such a policy by Liquidnet was a materially adverse act with respect to Plaintiff. Therefore, Plaintiff's federal and state retaliation claims must be dismissed.

### 2.     Plaintiff Fails to State a Claim of Retaliation Under the NYCHRL

With respect to the third element of a retaliation claim, under the NYCHRL law, a plaintiff must show that the employer's conduct was "reasonably likely to deter a person from engaging in protected activity." N.Y.C. Admin. Code § 8-107(7)*; Brown v. Montefiore Med. Ctr.,* No. 18-cv-03861 (PGG), 2019 U.S. Dist. LEXIS 78915, *25 (May 8, 2019).  As discussed above, Plaintiff

cannot plausibly allege that Liquidnet failed to promote her, as she does not contend that any promotional opportunity existed for which she applied and was rejected.  With regard to Plaintiff's separation of her employment from Liquidnet after the company implemented an arbitration policy that would bind all US employees, the US Supreme Court has held that an agreement to arbitration does not deprive a party of substantive or procedural rights. *Am. Express*, 133 S. Ct. 2304, 2310 (2013).  Therefore, implementation of an arbitration policy cannot possibly be viewed as a retaliatory action.  Separately, Plaintiff herself contends that in communicating with Liquidnet's General Counsel, Plaintiff stated that 'in that case [i.e., based on Liquidnet's insistence on enforcing its arbitration policy], "Liquidnet [had] terminated [Plaintiff's] employment"' as '[she] did "not consent to pursuing [her] claims in secret arbitration."' (SAC ¶ 59).  In other words, it was Plaintiff who made the decision to resign from Liquidnet because she did not want to be subject to its arbitration policy.  At no point does Plaintiff allege that Liquidnet separated her from her employment.  Under the circumstances, Plaintiff clearly has not plead any conduct on the part of Liquidnet that would be reasonably likely to deter someone from engaging in protected activity.  As a result, her NYCHRL retaliation claim must be dismissed as well.

### E.   TO THE EXTENT PLAINTIFF'S CIVIL CLAIMS ARE TIME-BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS, THEY MUST BE DISMISSED

Plaintiff asserts claims for sex discrimination and retaliation under Title VII, NYSHRL and NYCHRL. To bring a timely claim under Title VII, a charge must be filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged event. 42 U.S.C. § 2000e-5(e).  The NYSHRL and NYCHRL both have statutes of limitations of three years.

Here, Plaintiff filed her initial Complaint on or about November 8, 2019.  Plaintiff had filed a discrimination charge with the EEOC on or about December 23, 2019 and received her right-to-sue letter on or about August 3, 2020. (SAC ¶ 7)  Plaintiff submitted her SAC on August 4, 2020.

The following chart summarizes the respective look-back periods for each of Plaintiff's causes of action:

| CAUSE OF ACTION | LAST ACCRUAL DATE OF TIMELY CLAIMS |
|---|---|
| Title VII | 2/26/2019 (300 days before 12/23/2019) |
| NYSHRL | 11/9/2016 (3 years prior to 11/8/2019) |
| NYCHRL | 11/9/2016  (3 years prior to 11/8/2019) |
| TVPA | 11/9/2009 (10 years before 11/8/2019) |

Almost all of the alleged comments that comprise Plaintiff's claims of sexual harassment occurred before February 26, 2019 and are thus time-barred under Title VII. (See SAC ¶¶ 17-45). Similarly, many of the communications at issue took place before November 9, 2016 and are thus time-barred under the NYSHRL and NYCHRL.  (See SAC ¶¶ 17-25; 36-38; 42). In addition, Plaintiff alleges that certain conduct took place prior to November 9, 2009.  Since there is a ten year statute of limitations on TVPA claims, any allegations that relate to conduct that took place prior to November 2009 are time-barred. 18 U.S.C. § 1595(c).  Consequently, all time-barred allegations should be dismissed and should be disregarded for purposes of this motion.

**V.    CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the SAC be dismissed in its entirety, with prejudice, pursuant to Rule 12(b)(6).

Date:   December 10, 2020                    LITTLER MENDELSON, P.C.
New York, New York


By*:*      */s/A. Michael Weber*
A. Michael Weber
Rina Bersohn
Emma J. Diamond
900 Third Avenue
New York, New York  10022.3298
212.583.9600

*Attorneys for Defendants*