```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
MARY CORRADINO,                                             :
                                    Plaintiff,              :
                                                            :    19 Civ. 10434 (LGS)
              -against-                                     :
                                                            :    **OPINION AND ORDER**
LIQUIDNET HOLDINGS INC. & SETH                              :
MERRIN,                                                     :
                                    Defendants.             :
------------------------------------------------------------ X
```

LORNA G. SCHOFIELD, District Judge:

Human resources ("HR") professional, Plaintiff Mary Corradino, filed this action against her former employer, Defendant Liquidnet Holdings Inc. ("Liquidnet"), and its CEO, Defendant Seth Merrin, asserting claims under the Trafficking Victims Protection Act ("TVPA"), Title VII, the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). Defendants move to dismiss the Second Amended Complaint (the "Complaint"). For the reasons stated below, Defendants' motion is granted as to Plaintiff's TVPA claims but is denied as to Plaintiff's Title VII, NYSHRL and NYCHRL claims.

## I.   BACKGROUND

The following facts are taken from the Complaint and assumed to be true for purposes of this motion. *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 512 (2d Cir. 2020).

Around December 2006, Liquidnet hired Plaintiff as its Global Head of Recruiting. She was a top performer for Liquidnet. In 2010, Liquidnet promoted Plaintiff, and between 2012 and 2018, Liquidnet recognized Plaintiff as a "high-performing employee" during annual meetings in which executives identified employees with strong leadership potential.

## A. Merrin

As a senior HR professional, Plaintiff worked closely with Merrin. On several occasions, Merrin propositioned Plaintiff for sex and a relationship. For example, in mid-to-late 2014, during a business meeting, Merrin asked Plaintiff, "What do you do for sex?" Later in 2014, Merrin asked Plaintiff, in front of the company's then-Chief Technology Officer and his wife, "Are you coming home with me tonight? Are you ever going to come home with me?" On or about July 16, 2018, Merrin again asked Plaintiff if she was "ever coming home with [him]," and asked "How about tonight?" In addition, during an April 2019 lunch, Merrin asked Corradino, "When are you going to get married?" and "When are you going to marry me?"

Others noticed Merrin's interest in Plaintiff. For example, another Liquidnet employee noticed Merrin ogling Plaintiff during a charity event. In addition, the current Head of Europe, the Middle East, and Africa ("EMEA") and the Global Head of Sales at Liquidnet told Plaintiff that she should date Merrin to advance her career. The Head of EMEA also told Plaintiff that she should "take one for the team," and advised that "some [women] would not care and just be with him to get ahead because he has a lot of money."

Merrin's inappropriate behavior was not limited to comments and actions directed at Plaintiff. During a holiday party he gave a toast to a female employee's husband, thanking him for letting Merrin "use his wife" for the past few weeks. During a May 2018 quarterly presentation on the state of the company, he used the phrase "here's the money shot." During an April 2019 lunch with Plaintiff and other male Liquidnet leaders, Merrin compared watching the television show Game of Thrones with his daughter to "watching porn with her." During the same lunch, he also stated that he was "having dinner with Charlize Theron over the weekend and would like to get with her," and commented that an openly gay male employee "didn't know

what he was missing" by not having sex with women.  Merrin also asked Liquidnet's female general counsel how many drinks he would have to buy her to sleep with him; required his female assistant to order prostitutes for him; incessantly texted a junior female employee who was not romantically interested in him; and asked another female management-level employee to go home with him.

**B. Other Male Liquidnet Leaders**

Plaintiff experienced advances and received sexual comments from other senior, male Liquidnet employees.  For example, in or around 2008 or 2009, Plaintiff's supervisor lavished unwanted praise on her appearance and personality.  Around the summer of 2009, he learned that Plaintiff had a boyfriend and did not speak to her for about a week.  In 2014, when this supervisor learned that Plaintiff was dating a new man, he was again upset and asked, "Why didn't you tell me about this?"

In or around the winter of 2009, the then-Chief Operating Officer ("COO") asked Plaintiff to go out with him for a drink at the bar beneath the company's office.  While they were at the bar, the COO, who was married, asked Plaintiff, "Have you ever had an affair?" and informed Plaintiff that he had done so "a few times."  Plaintiff responded that she "did not mix men with work" and does not "mess around with married men," and the COO replied, "What do you think, I'd leave my wife for you?"

Between 2009 and 2011, Liquidnet's Head of Member Services asked Plaintiff out, including to his beach house for the weekend.  He also complimented Plaintiff's appearance, intelligence and "strength as a woman."  In addition, after Merrin made a joke about Plaintiff and porn, the Head of Member Services stated that he was "distracted for a second," and added, "I mean Mary and porn in the same sentence."

3

Several others engaged in inappropriate behavior. The former Head of EMEA repeatedly asked Plaintiff out and, on one occasion, propositioned her for sex. The current Head of EMEA and Global Head of Sales told Plaintiff she looked like "[she] would enjoy a nice big fat Cuban," when a group of senior leadership went to smoke cigars. Around July 16, 2018, the then-Asia Pacific ("APAC") COO asked Plaintiff multiple times to "take [him] home tonight." Plaintiff's colleagues in the London office also repeatedly referred to her as "sexy" and stated that they "love" her.

### C. Complaints and Termination

On September 9, 2019, Plaintiff complained, through counsel, about Merrin's sexual harassment. Following this complaint, Liquidnet threatened Plaintiff's job. On November 6, 2019, after Liquidnet learned that Plaintiff had retained counsel in connection with her complaints, the company announced a mandatory arbitration policy that required employees "to arbitrate covered claims, instead of litigating them in court" (the "Arbitration Agreement"). "Covered claims" included claims of "discrimination, harassment . . . and retaliation," and all arbitration proceedings were to remain confidential. The Arbitration Agreement provided that, by continuing her employment for three days after receipt of the agreement, Plaintiff would be deemed to have "accepted" its terms and to have waived her right to pursue claims in court. On November 7, 2019, Plaintiff wrote to Liquidnet's General Counsel, explaining that she did not agree to arbitration but intended to continue working under her current arrangements. In response, Liquidnet made it clear that she could not keep her job and litigate covered claims. To preserve her legal rights, Plaintiff filed this lawsuit on November 8, 2019, before the Arbitration Agreement went into effect. Liquidnet informed Plaintiff that she would have to dismiss her lawsuit to keep her job and effectively fired Plaintiff.

4

## II. STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Montero v. City of Yonkers, N.Y.*, 890 F.3d 386, 391 (2d Cir. 2018), but gives "no effect to legal conclusions couched as factual allegations." *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

## III. DISCUSSION

Plaintiff brings eight claims including sexual exploitation and retaliation claims under the TVPA, as well as discrimination and retaliation claims under Title VII, NYSHRL and NYCHRL. For the reasons stated below Defendants' motion is granted as to the TVPA claims, but denied as to the remaining claims under Title VII, NYSHRL and NYCHRL.

### D. TVPA Claims

Plaintiff's claims under the TVPA, 18 U.S.C. § 1591, are dismissed because the Complaint fails to allege (1) a "commercial sex act," (2) obtained through "force, threats of

force, fraud . . . or any combination of such means," and, with respect to Liquidnet, (3) that the company benefitted from any such act. *See* 18 U.S.C. § 1591. Section 1591 of the TVPA provides that

> Whoever knowingly . . . in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides obtains, advertises, maintains, patronizes, or solicits by any means a person . . . knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2),[1] or any combination of such means will be used to cause the person to engage in a commercial sex act, . . . shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). "Commercial sex act" is defined as "any sex act, on account of which anything of value is given or received by any person." 18 U.S.C. § 1591(e)(3). "[T]he TVPA extends to enticement of victims by means of fraudulent promises of career advancement, for the purposes of engaging them in consensual or . . . non-consensual sexual activity." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 168 (S.D.N.Y. 2019) (declining to dismiss TVPA claims against Harvey Weinstein where the complaint alleged that Weinstein promised plaintiffs career advancement and, during private meetings, sexually assaulted them); *accord Ardolf v. Weber*, 332 F.R.D. 467, 471-73 (S.D.N.Y. 2019) (declining to dismiss TVPA claims against renown photographer Bruce Weber where the complaint alleged that Weber enticed plaintiffs with the prospect of modeling career advancement, fraudulently convinced them to be alone with him for a "breathing exercise" and sexually molested them during photoshoots); *Canosa v. Ziff*, No. 18 Civ. 4115, 2019 WL 498865, at * 2, 23 (S.D.N.Y. Jan. 28, 2019)

---

[1] "The term 'coercion' means --
   (A) threats of serious harm to or physical restraint against any person;
   (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or
   (C) the abuse or threatened abuse of law or the legal process.
18 U.S.C. § 1591(e)(2).

(declining to dismiss TVPA claims against Harvey Weinstein and The Weinstein Company where the complaint alleged that Weinstein met with plaintiff "under the guise of working together on productions," and "t[ook] advantage of those meetings and his power as a well-known producer to sexually assault and intimidate her").

Setting aside whether the sexual harassment Plaintiff experienced amounts to a "sex act," there is no indication that such acts were commercial, meaning in exchange *for something of value*. The prospect of career advancement can render a sex act commercial in nature. *See, e.g.*, *David v. Weinstein Co. LLC*, 431 F. Supp. 3d 290, 301 (S.D.N.Y. 2019) (finding a commercial sex act based on Weinstein's "'promise of a role' in one of his productions," coupled with his "pattern of doing the same with other women over decades"); *Geiss*, 383 F. Supp. 3d at 168 (finding that "something of value" includes "promises of career advancement"). While the Complaint alleges that Merrin and other Liquidnet executives propositioned Plaintiff for sex on several occasions, it does not allege that they ever proposed any sort of *quid pro quo*, like sex for career advancement. *See Ardolf*, 332 F.R.D. at 478 (treating the prospect of career advancement as a thing of value). In fact, the Complaint alleges that despite Plaintiff's repeated refusals to engage in sex with Merrin and others, she was promoted and named a "high-performing employee" during company meetings. In other words, Plaintiff did not have to have sex with superiors to advance at Liquidnet. Plaintiff points to allegations that the Head of EMEA told her she should date Merrin to advance her career and that "some [women] would not care and just be with him to get ahead because he has a lot of money." However, the Complaint never links these statements back to Merrin or provides any indication that Merrin promised Plaintiff career advancement in exchange for a relationship and/or sex.

7

Even if the Complaint had pleaded a commercial sex act, it does not allege that "force, threats of force, fraud or coercion" were used to cause Plaintiff to engage in such an act. "The TVPA requires Plaintiffs to plausibly allege that Defendant enticed them knowing that he would use fraud or force to cause a commercial sex act to take place." *Ardolf*, 332 F.R.D. at 475. With respect to coercion, courts look to whether a reasonable person of "the same background and in the same circumstances as" plaintiff would "reasonably believe that she . . . would suffer serious harm if she refused to continue providing sex acts." *U.S. v. Rivera*, 799 F.3d 180, 186 (2d Cir. 2015); *accord Paguirigan v. Prompt Nursing Emp. Agency LLC*, No. 17 Civ. 1302, 2019 WL 4647648, at *16 (E.D.N.Y. Sept. 24, 2019). The Complaint does not allege that Defendants used force against Plaintiff or coerced her to engage in sex acts through the "threat of serious harm." *Cf., Noble v. Weinstein*, 335 F. Supp. 3d 504, 518-19 (S.D.N.Y. 2018) (finding force where Weinstein "forcibly pulled [a plaintiff] into the bathroom, "gripped her firmly," "pulled down [her] shirt" and "forced her to masturbate him"); *Canosa*, 2019 WL 498865 at *7, 22 (finding coercion where Weinstein "intimidated [plaintiff] into having oral sex . . . raped her in Malaysia . . . and forced her into a sex act in a Beverly Hills hotel"). In addition, the Complaint does not allege that Defendants made any "'knowing misrepresentation . . . of a material fact made to induce [Plaintiff] to act to . . . her detriment.'" *See, e.g., Ardolf*, 332 F. R.D. at 475 (pointing to fraudulent claims that the photographer needed to conduct "breathing exercises" with the models); *Canosa*, 2019 WL 498865 at *3 (pointing to sexual abuse that occurred under the false pretense of a business meeting).

The TVPA claims are dismissed against Liquidnet for the additional reason that the Complaint fails to allege that the company received a benefit from any participation in sex trafficking. "Unlike direct perpetrators of sex trafficking, aiders and abettors of sex trafficking

are liable under the TVPA only if they knowingly '*benefit*[], financially or by receiving anything of value, from participation in a venture which has engaged in' sex trafficking." *Geiss*, 383 F.3d at 169 (citing 18 U.S.C. §§ 1591(a)(2), 1595(a)). "[T]here must be a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with actual or, in the civil context, constructive knowledge of that causal relationship." *Id*. (dismissing a TVPA claim against The Weinstein Company and explaining that the "controlling question [was] whether H. Weinstein provided any . . . benefits to TWC *because of* TWC's facilitation of H. Weinstein's sexual misconduct."). The Complaint does not allege that Liquidnet benefitted from the sexual harassment of Plaintiff. In support of her claims against Liquidnet, Plaintiff points to allegations that Liquidnet's Head of EMEA and Global Head of Sales told Plaintiff she should date Merrin to advance her career and that she should "take one for the team," and allegations that Liquidnet retaliated when Plaintiff complained of Merrin's behavior. Even if these allegations show Liquidnet's participation in a scheme in violation of the TVPA, they do not sufficiently plead that Liquidnet benefitted from any such scheme. Plaintiff also argues that Liquidnet benefited merely by maintaining Merrin as a profitable CEO. However, the Complaint does not allege facts in support of this assertion and, even if it did, does not allege that Merrin secured Liquidnet's "complicity in his [acts] as a condition of his employment." *See Geiss*, 383 F. Supp. 3d at 170 (noting that the complaint did "not allege that H. Weinstein secured TWC's alleged complicity in his sexual violence as a condition of his employment," or that "any directors or officers to whom TWC paid a salary were compensated for their participation in H. Weinstein's assaults"). Accordingly, the Complaint does not state a claim against Liquidnet for participation in sex trafficking.

## IV. Title VII, NYSHRL and NYCHRL Discrimination Claims

Title VII, NYSHRL and NYCHRL outlaw unlawful discriminatory practices on the basis of, *inter alia*, sex. 42 U.S.C. § 2000e-2; N.Y. Exec. L. § 296; N.Y.C. Code § 8-107. "Without question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986); *accord Canosa*, 2019 WL 498865 at *17. Under Title VII and NYSHRL discrimination based on sexual harassment can be pleaded in two ways: (1) a *quid pro quo* harassment claim, which requires pleading that the plaintiff "suffered adverse employment action(s) 'either because of gender or because a sexual advance was made by a supervisor and rejected by her,'" *Williams v. N.Y.C. Dep't of Educ.*, No. 19 Civ. 1353, 2019 WL 4393546, at *6 (S.D.N.Y. Aug. 28, 2019) (citation omitted), and (2) a hostile work environment claim, which requires pleading "that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn v. City of N.Y.*, 795 F.3d 297, 320-21 (2d Cir. 2015) (citation omitted); *see also Summa v. Hofstra Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013) (noting that "[h]ostile work environment claims under both Title VII and NYSHRL are governed by the same standard"); *accord Bradenburg v. Greek Orthodox Archdiocese of North Amer.*, No. 20 Civ. 3809, 2021 WL 2206486, at *7 (S.D.N.Y. June 1, 2021). "'While the standard for establishing a hostile work environment is high,' the Second Circuit has 'repeatedly cautioned against setting the bar too high, noting that while a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Villalta v. JS Barkats, P.L.L.C.*, No. 16 Civ. 2772, 2021 WL 2458699, at *9

(S.D.N.Y. Apr. 16, 2021), *report and recommendation adopted*, No. 16 Civ. 2772, 2021 WL 2458023 (citation omitted).

Under the NYCHRL, a more lenient standard applies. Specifically, a plaintiff must show that she was "treated 'less well' -- because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Amer.*, 715 F.3d 102, 110 (2d Cir. 2013); *accord Villalta*, 2021 WL 2458699 at *10. The NYCHRL is to be construed "broadly in favor of discrimination plaintiffs," and "federal courts must consider separately whether [conduct] is actionable under the broader New York City standards," where conduct is not actionable under federal and state law. *Mihalik*, 715 F.3d at 109; *accord Brightman v. Physician Affiliate Grp. Of N.Y., P.C.*, 2021 WL 1999466, at * 7 (S.D.N.Y. May 19, 2021). Because, for the reasons stated below, Plaintiff's claims survive even under the more stringent standards of Title VII and NYSHRL, a separate analysis of NYCHRL is not necessary in this instance.

Here, the Complaint sufficiently pleads discrimination based on a hostile work environment of sexual harassment.[2] The Complaint alleges more than a few isolated, off-color comments. On several occasions between 2014 and 2019, Liquidnet's CEO, Merrin, asked Plaintiff to engage in sex and/or a relationship with him, despite Plaintiff's repeated refusals to do so. He looked at Plaintiff in a sexual manner at a public event, and during corporate lunches and parties he discussed his sex life and used lewd language in front of Plaintiff. Merrin also generally cultivated an environment of sexual harassment at Liquidnet by requiring his female assistant to order prostitutes for him, incessantly texting a junior female employee who was not

---

[2] This is true based on application of the "severe or pervasive" standard, which is more stringent than the applicable standard under the October 11, 2019, amendment to the NYSHRL -- specifically, to New York Executive law § 296(1)(h) -- which applies where "the relevant conduct . . . all occurred before the effective date of the amended law." *See Maiurano v. Cantor Fitzgerald Secs.*, No. 19 Civ. 10042, 2021 WL 76410, at *3, n.2 (S.D.N.Y. Jan. 8, 2021).

11

romantically interested in him and asking another female management-level employee to go home with him. Merrin was not the only individual engaging in sexual harassment. Plaintiff's supervisor supplied unwanted praise of Plaintiff's appearance and personality and, when he learned she had a boyfriend, stopped speaking to her. The former COO of Liquidnet asked Plaintiff if she had ever had an affair and told her he had done so "a few times." Liquidnet's Head of Member Services asked Plaintiff out, including to his beach house for the weekend, and made inappropriate comments about Plaintiff. Liquidnet's Head of EMEA and Global sales asked Plaintiff to go home with him and made inappropriate comments about Plaintiff. These allegations are sufficient to plead that Liquidnet was permeated with pervasive discriminatory intimidation, ridicule and insult.

In addition, Defendants' argument that these claims are untimely is unpersuasive because the continuing violation doctrine applies. NYSHRL and NYCHRL claims are subject to a three-year statute of limitations. *See* N.Y.C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d). For Title VII claims, a plaintiff "must file a charge of discrimination with the EEOC 'within three hundred days after the alleged unlawful employment practice occurred,' 42 U.S.C. § 2000e-5(e)(1), and must then file an action in federal court within 90 days of receiving a right-to-sue letter from the agency, *id*. § 2000e-5(f)(1)." *Duplan v. City of N.Y.*, 888 F.3d 612, 621-22 (2d Cir. 2018); *accord Brown v. Wetz*, No. 18 Civ. 11178, 2021 WL 964922, at *5 (S.D.N.Y. Mar. 15, 2021). Acts outside of these limitations periods may be actionable if the continuing violation doctrine applies. The continuing violation doctrine provides that "'the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to the hostile environment takes place within the statutory time period.'" *McGullam v. Cedar Graphics, Inc.*,

609 F.3d 70, 75 (2d Cir. 2010) (citation omitted); *accord Williams*, 2021 WL 1178118, at *5. "Where the course of conduct alleged involves sexual harassment, New York courts have recognized that it is the continuous nature of the conduct that may make it so outrageous and extreme as to be actionable," and have applied the continuing violation doctrine. *Canosa*, 2019 WL 498865 at *8 (internal citation omitted). "[H]ostile work environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *McGullam*, 609 F.3d at 75 (citation omitted); *accord Brandenburg*, 2021 WL 2206486, at *8. "[C]ourts give a broader construction to the continuing violations doctrine under the NYCHRL than under Title VII or the NYSHRL." *Williams*, 2019 WL 4393546 at *19 (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)).

Here, the initial complaint was filed on November 8, 2019. Plaintiff filed a discrimination charge with the EEOC on or about December 23, 2019, and received notice of her right to sue under Title VII on August 3, 2020. The Complaint alleges an ongoing practice of harassment, including specific incidents of harassment that took place as late as April 2019. Some of these incidents fall within the three-year limitations period for NYSHRL and NYCHRL claims and the 300-day look-back period from the date Plaintiff filed the EEOC charge applicable to her Title VII claims. The ongoing nature of the harassment is underscored by Merrin repeatedly propositioning Plaintiff. Accordingly, Plaintiff's Title VII, NYSHRL and NYCHRL claims are timely for the purposes of the pleading stage.

## V. Title VII, NYSHRL and NYCHRL Retaliation Claims

To survive a motion to dismiss a Title VII or NYSHRL retaliation claim, "the plaintiff must plausibly allege that: (1) defendants discriminated -- or took an adverse employment action -- against [her], (2) because [s]he has opposed any unlawful employment practice." *Duplan*, 888

F.3d at 625 (citation omitted); *accord Ahmad v. N.Y.C. Health and Hosps. Corp.*, No. 20 Civ. 675, 2021 WL 1225875, at *26 (S.D.N.Y. Mar. 31, 2021). In addition, "a plaintiff must plausibly plead a connection between the act and h[er] engagement in protected activity." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (citing 41 U.S.C. § 2000e–3(a)); *accord Ahmad*, 2021 WL 1225875 at *26. The NYCHRL is "slightly more solicitous to retaliation claims" and prohibits "retaliat[ion] . . . against any person because such person has . . . opposed any practice forbidden" by the NYCHRL. *Brightman*, 2021 WL 1999466 at *10. To survive a motion to dismiss an NYCHRL retaliation claim "a plaintiff must plead facts giving rise to an inference of a causal connection between the plaintiff's protected activity and an adverse employment action." *Id*.

The Complaint states a claim for retaliation under Title VII, NYSHRL and NYCHRL. The allegations about Plaintiff's complaints of sexual harassment sufficiently plead that she opposed an unlawful employment action. The Complaint also sufficiently alleges adverse employment actions, namely that Liquidnet implemented a mandatory arbitration policy shortly after Plaintiff retained counsel in connection with her harassment claims and effectively terminated Plaintiff when she would not agree to that policy.

Defendants contend that a mandatory arbitration policy cannot constitute an adverse employment action because an agreement to arbitrate does not deprive a party of substantive or procedural rights and, instead, merely establishes an alternative forum for adjudicating those rights. Here, however, the timing and manner of Liquidnet's implementation of a mandatory arbitration policy -- just shy of one month after Plaintiff retained counsel in connection with her sexual harassment complaints -- coupled with the insistence that she agree to arbitrate as a condition of employment, are sufficient to plead an adverse employment action. *See Gary L. v.*

14

*CSX Transp., Inc.*, No. 18 Civ. 808, 2020 WL 6343289, at *5 (N.D.N.Y. Oct. 29, 2020) ("Constructive discharge is considered an adverse employment action sufficient to support a retaliation claim.") (citation omitted).

## VI. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted as to the TVPA claims but otherwise denied.

The Clerk of Court is respectfully directed to close the motion at Docket No. 32.

Dated: July 8, 2021
 New York, New York

**LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE**